Aaron Berman and Shiphra Berman, Husband and Wife v. Commissioner. Samuel K. Joseph and Helen W. Joseph, Husband and Wife v. Commissioner.
Berman v. Commissioner
Docket Nos. 7090 and 7091. United States Tax Court
1946 Tax Ct. Memo LEXIS 254; 5 T.C.M. (CCH) 128; T.C.M. (RIA) 46057; February 28, 1946
*254 Milton A. Kamsler, Esq., 1632 Bankers Securities Bldg., Philadelphia, Pa., for the petitioners. Karl W. Windhorst, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: In each proceeding the petitioners filed joint income tax returns. for the year 1941 respondent determined a deficiency in income tax in Docket No. 7090 in the amount of $3,550.48; and in Docket No. 7091 he determined a deficiency of $779.20. The deficiencies result from the disallowance of deductions taken for losses in connection with stock of a corporation. The question is whether a loss was sustained during the taxable year. The petitioners filed their respective joint income tax returns with the collector for the first district of Pennsylvania. These proceedings have been submitted on stipulations of facts and exhibits. Findings of Fact The facts which have been stipulated are adopted as part of our findings of fact and the stipulations are incorporated herein by reference. Aaron Berman purchased 690 1/2 shares of the capital stock of the Philadelphia and Suburban Mortgage Guarantee Company at a cost of $105 per share during the years 1923 to 1928, inclusive. During the same period, *255 Shiphra Berman purchased 54 shares of stock of the same company at a cost of $105 per share. The 744 1/2 shares of stock was purchased by the Bermans at a total cost of $78,172.50. Samuel K. Joseph purchased 205 shares of stock of the above-named corporation, and Helen W. Joseph purchased 50 shares of the same stock, at a cost of $105 per share during the years 1923 to 1928, inclusive. The 255 shares of stock were purchased for the total sum of $26,775. The Philadelphia and Suburban Mortgage Guarantee Company, hereinafter called the Mortgage Company, or the Company, was organized under the laws of Pennsylvania in 1923, with an authorized capital stock of $1,000,000, represented by 10,000 shares having a par value of $100 per share. The outstanding stock consisted of 7,500 shares. The corporation was engaged in the business of guaranteeing mortgages on improved real estate and purchasing and selling guaranteed mortgages and mortgage certificates. The Company went into receivership in 1933. A bill in equity was filed on March 20, 1933, naming the Company and a subsidiary, the Kent Securities Corporation, as defendants. Temporary receivers were appointed on March 27, 1933, and the appointment *256 of receivers was made permanent on April 29, 1933. W. S. Crowl and S. R. Rosenbaum were appointed receivers. Jacob Schreiber and J. J. Schamberg were appointed appraisers. The appraisers determined that the value of the assets taken over by the receivers was $601,831.81 as of March 27, 1933. The receivers and appraisers were appointed by the Court of Common Pleas No. 1. Under decrees of the Court of Common Pleas, the receivers were allowed to continue the operations of the Mortgage Company from 1933 until 1941, during which period the receivers slowly liquidated the assets of the Company. No new business was acquired by the receivers after December 31, 1939. The only business conducted by the receivers during 1940 and 1941 was in connection with the settlement of claims and the sale of assets. On November 1, 1941, the receivers filed a petition with the Court of Common Pleas asking for leave to discontinue operations of the Company and to sell and liquidate all of the assets. On November 14, 1941, Judge Parry of the Court of Common Pleas signed a decree which provided as follows: To discontinue all business of Philadelphia and Suburban Mortgage Guarantee Company and its subsidiary *257 Kent Securities Corporation, and to sell and liquidate all assets subject to the subsequent approval of this Court; and To employ Charles S. Rockey & Company, accountants, to prepare the account of W. Sherwood Crowl and Samuel R. Rosenbaum, Receivers of Philadelphia and Suburban Mortgage Guarantee Company and its subsidiary, Kent Securities Corporation, for filing in this Court. A notice was given by mail to the creditors, stockholders, and all interested parties with respect to the various petitions filed by the receivers in the Court of Common Pleas. Operations from 1933 to 1941, inclusive, as shown by the Federal income tax returns filed by the receivers resulted in a total loss of $404,356.83. On November 12, 1938, the Court signed a decree fixing February 1, 1939, as the final date on which proofs of claim could be filed with the receivers. The receivers gave public notice of this decree by advertising as provided in the decree, and copies of such notices together with blank proofs of claim were mailed to all persons shown on the books of the Company as creditors and stockholders. As a result of this action, proofs of claim aggregating $440,549.85 were filed prior to February *258 1, 1939. In the petition for leave to continue operations which was filed by the receivers on May 12, 1939, there was contained the following statement with respect to the proofs of claim: 8. There were received by the Receivers Proofs of Claim as follows: Claims to which we believe there are
no offsets
$ 56,766.74
Claims in connection with which
further investigation is needed
19,853.96
Accounts payable, judgments, etc.
15,167.43
Separate claim filed by George H.
Harkins, as attorney, in connection
with which there is an outstanding
agreement which should reduce
this amount
15,780.06
Claim filed by Robert G. Smith, as
attorney, in connection with which
we have an agreement which would
materially reduce this liability
11,756.82
Claim under agreement with Leonard
A. Levine
1,985.69
Claims filed by Lukens & Montgom-
ery, as to which receivers have
setoffs and defenses
139,137.50
Individual claims in connection with
which the receivers believe they
have defenses or offsets
43,409.16
Claims concerning which receivers
believe they have no liability
4,363.09
Claims filed by holders of guaranteed
participation certificates
132,329.40
$440,549.85 As of March 27, 1933, the Mortgage Company had outstanding 440 guarantees covering *259 mortgages in the principal amount of $1,598.700. These guarantees do not include the guarantees outstanding to holders of participation certificates referred to in the schedule set forth above. In the petition for leave to continue operations which was filed by the receivers on November 8, 1940, the following statements were made: 9. * * * Since the Receivers have been operating the Company, there have been cancelled and surrendered a total of 335 guarantees in the aggregate principal amount of $1,213,350.00, and in addition, are presently negotiating for the cancellation of three additional guarantees totalling $11,800.00. When these additional guarantees are cancelled, there will be outstanding 102 guaranteed policies in the total amount of $373,550.00, and the Receivers believe they have a legal defense by reason of foreclosures, action of the mortgagees, etc., to a large part of this remaining balance. 10. At the time of the last Petition, there were outstanding guarantees of $144,711.12 to holders of participation certificates. During the last six months, additional guarantees with participation certificates have been surrendered and in addition, negotiations are now pending for *260 the surrender of guarantees in the amount of $19,357.12 in addition to guarantees previously surrendered. With these additional guarantees surrendered, there will be outstanding guarantees amounting to $29,108.89 on participation certificates. The Receivers are hopeful, within the next few months, of being able to enter into agreements with the holders of these guarantees for their surrender. The receivers in the verified petition filed on November 10, 1938, with respect to the time within which claims may be filed, admitted that the original appraised value of the assets taken by them as of March 27, 1933 "now appears excessive". The balance sheets which are respectively attached to the Federal income tax returns filed by the receivers for the years 1933 to 1941, inclusive, reflect the value of the assets as originally appraised in 1933. The said balance sheets furthermore do not include the following liabilities (1) the claims totaling $440,549,85, set forth in the schedule above, and (2) outstanding capital stock in the amount of $750,000. There is included among the assets of the Company an equity in real estate and mortgages against which are outstanding participation certificates *261 in connection with which the Company had issued its guarantees. On October 20, 1938, the remaining assets of the Company, taken at the value given by the appraisers in 1933 had an appraised value of $359,460.14 which amount included the sum of $144,711.52 representing the amount invested in first mortgage participation certificates. The total assets of the Company in receivership as of October 20, 1940, using the original appraisals, amounted to $172,335.18 which included the sum of $53,000 representing the amount invested in first mortgage participation certificates. The receivers in a verified petition for leave to continue operations filed on November 8, 1940, admitted that the participation certificates held by the company "probably have no value" because they were subordinated to outstanding participation certificates held by others. The receivers filed a capital stock tax return with the Commonwealth of Pennsylvania for the calendar year 1939, which disclosed no tax liability. On April 9, 1941, the Department of Revenue asserted a capital stock tax of $249.39 calculated at the rate of five mills upon an alleged valuation of $49,878.00. The receivers filed a protest to the proposed *262 tax, which was duly verified, wherein the following statements appear: (a) On March 27, 1933, the Common Pleas Court No. 1 of the County of Philadelphia appointed receivers in equity for the taxpayer corporation. These receivers are W. Sherwood Crowl and Samuel R. Rosenbaum. Since their appointment, the receivers have been engaged in the orderly liquidation of the affairs of the corporation. * * * * *
(c) In preparing the subject return, book figures were used in the preparation of the general balance sheet. These figures did not completely reflect the actual realizable value of the assets, nor the total of the proofs of claims filed with the receivers. (d) In the opinion of the receivers and their counsel, the company had no net worth at December 31, 1939, and, therefore, the capital stock had no value in fact. * * * * *
WHEREFORE, it is respectfully submitted that a resettlement of the capital stock tax account of the petitioner for the aforesaid year should be made upon a nominal amount. The protest was accompanied by a balance sheet as of December 31, 1939, being an exact copy of the balance sheet incorporated as part of the 1939 tax return. On March 27, 1942 a Supplemental Affidavit *263 of Facts, sworn and subscribed before a notary public, was filed by Samuel R. Rosenbaum, co-receiver, wherein the following statements appear: I. That the first and partial account of the Receivers in Equity of the Philadelphia and Suburban Mortgage Guarantee Company (and the Kent Securities Corporation, a related entity) covering the period from March 27, 1933 to March 14, 1942 was recently filed in the Court of Common Pleas No. 1 for the County of Philadelphia (March Term 1933, No. 2419), which account sets forth inter alia, to wit: Total assets taken over by the Re-
ceivers as appraised by appraisers
appointed by the Court aforesaid,
including subsequent minor adjust-
ments
$602,213.75
Deduct: Losses on liquidation, opera-
tion losses and disbursements in
satisfaction of secured debts and
costs and expenses
552,061.31
Balance of principal consisting of
cash on deposit of $45,529.14 and
mortgages and other assets of
$4,623.30
$ 50,152.44
II. That the aforesaid balance of assets of $50,152.44, after further liquidation and deduction of further costs and expenses, will be available to meet the liabilities of general and contingent creditors aggregating approximately $300,000 as represented by proofs *264 of claims lodged with the Receivers. III. It is believed and therefore averred that the assets were equally worthless during the taxable year ended December 31, 1939, and the consequent deficiency to meet the liabilities equally acute. On May 4, 1942, the Department of Revenue and Department of Auditor General, both of the Commonwealth of Pennsylvania, refused the prayer of the receivers for resettlement. The receivers at no time acquiesced to the action of the Department of Revenue. The first and final account of the receivers for the period March 27, 1933 to March 14, 1942, inclusive, was filed on May 21, 1942. The Court entered its decree confirming the account on June 29, 1942. The final decree was entered on July 13, 1942, with respect to confirming subsequent payments made by the receivers and effecting discharge of the receivers. As of July 13, 1942 there were proofs of claim in excess of $300,000 which were unpaid. The Commonwealth of Pennsylvania had tax claims approximating $15,000 which were preferred over general creditors. The Commonwealth of Pennsylvania received a partial payment of $8,152.38. All other creditors and stockholders received nothing upon final liquidation. *265 The remaining assets upon final liquidation, which represented a total value of less than $50,000, were used to pay liquidation costs and expenses. The returns of the respective petitioners were prepared on the cash basis. Opinion Petitioners claim deductions for losses under section 23 (g) (2) of the Internal Revenue Code upon the contention that the stock of the Mortgage Company became worthless in 1941. Petitioners alleged in their separate petitions that the respondent erred in disallowing deduction of one-half of the cost of the stock as a long-term capital loss. [1] The parties are agreed upon the cost of the stock. If the stock became worthless in 1941, petitioners are entitled to deductions in the amount of one-half of the cost. Section 117, Internal Revenue Code. Respondent contends that the stock became worthless prior to 1941, and that the evidence does not show that the stock had any value *266 on the first day of 1941. The facts which have been stipulated by the parties have been set forth in full. Briefly summarized, they show that the Mortgage Company went into receivership in 1933 and that no new business was acquired after December 31, 1939. From 1933, the receivers were slowly liquidating the assets of the Company. As of November 10, 1938, the receivers reported in a petition filed in the Court of Common Pleas that the original appraisal of the assets of the Company which was made in 1933 appeared to be excessive. However, no other appraisal of assets was made and the value of assets reported from time to time after 1933 was based upon the 1933 appraisal. In October, 1938, the remaining assets of the Company had a value, based on the 1933 appraisal, of $359,460.14, including $144,711.52 of first mortgage participation certificates; and in October of 1940, the remaining assets had a value of $172,335.18, including $53,000 of first mortgage participation certificates. The receivers stated in a verified petition on November 8, 1940 that the First Mortgage Participation Certificates probably had no value. Taking that statement by the receivers into consideration, and excluding *267 those certificates from the assets of the Company, it appears that the assets of the Company had a value on November 8, 1940 of not more than $119,335, based upon the 1933 appraisal. It appears from the stipulation that on November 8, 1940, there were $373,550 of guarantees outstanding against assets of $119,335. The proofs of claim of creditors of the Company filed on February 1, 1939 amounted to $440,549.85. The record does not show what amount of these claims had been paid by the end of 1940, what amount had been settled or compromised, or what amount remained unpaid at the end of 1940. The receivers stated in their petition of May 12, 1939 that they believed that some of the claims filed could be offset or reduced, but there were only $4,363.09 of claims for which the receivers denied having any liability, and they admitted liability for claims totalling at least $93,773.82. [2] *268 The parties have stipulated that as of July 13, 1942, there were proofs of claim, unpaid, in excess of $300,000. The difference between $119,335 of assets and $93,773.82 admitted liability on proofs of claim is $25,561.18. There were unpaid proofs of claim of creditors aggregating $300,000 in 1942. There were mortgage guarantees totalling $373,550 on November 8, 1940. The above stated value of assets at the end of 1940 is admittedly not the liquidating value in 1940 of the assets. Petitioners have failed to prove the facts relating to the actual net worth of the Company at the end of 1940. It was not until November 1, 1941 that the receivers filed a verified petition for leave to discontinue operations of the Company and to sell and liquidate all the assets of the Company. That petition was granted on November 14, 1941. Petitioners contend that the decree of the Court of Common Pleas of November 14, 1941, directing the receivers to discontinue all business and sell the remaining assets was an identifiable event determining the actual worthlessness of the stock in question. *269 Petitioners argue that until the above date the stock had potential value. Petitioners argue that the value, and conversely the worthlessness, of the stock depended not only upon its current liquidating value but upon "what value it may acquire in the future through the foreseeable operations of the corporation", citing Sterling Morton, 38 B.T.A. 1270, affirmed 112 Fed. (2d) 320, for a test to be applied in determining when stock becomes worthless. With respect to the argument that consideration should be given to the potential value of the stock at the end of 1940, there is only one answer. Petitioners have not offered any evidence whatsoever on the potential or prospective value of the stock. The evidence before us shows that no new business was acquired after December 31, 1939, and that the receivers had been operating the business at a loss since 1933. There is no evidence that at the end of 1940 there was any reasonable expectation that the stock would become valuable at some future time, which expectation was foreclosed by the order of November 14, 1941, to make a final liquidation. See John Crosby Brown, 27 B.T.A. 176. It is necessary for petitioners to show that the stock in *270 question had some value at the close of the year 1940 in order to overcome the presumption inherent in the respondent's determination that the stock did not become worthless in 1941, and that no loss was sustained in 1941. See Mark D. Eagleton, 35 B.T.A. 551, 557; affirmed 97 Fed. (2d) 62. At the end of 1940, the book value of the Company's assets, based upon the 1933 appraisal and the receiver's opinion of the value of first mortgage participation Certificates, was the net amount of $119,335, and the total amount of proofs of claim was not less than $300,000. There were 7,500 shares of capital stock outstanding. Thus, the evidence shows that the stock of the Company had no liquidating value at the beginning of 1941. Petitioners have failed to show that the stock continued to have a potential value in 1941 up to November 14, 1941, even though it had no liquidating value in 1940. In this situation the "event" of the decree dated November 14, 1941 of the Court of Common Pleas to cease business and sell assets, does not serve to establish that the worthlessness of the stock became an actuality in 1941. Sterling Morton, supra.Also, because of the evidence which shows that the stock of *271 the Company had no liquidating value at the end of 1940, it is not determinative of the question that the Department of Revenue of the Commonwealth of Pennsylvania determined that the stock of the Company had a value of $49,878 in the year 1939. It is pointed out, further, that there is no evidence that the Department of Revenue of Pennsylvania determined that the stock had any value in the year 1940. Also, very little weight can be given to the balance sheets of the Company attached to its income tax returns for 1939 and 1940 which reported that there was receiver's equity in assets in the respective amounts of $153,539, and $196,667. The balance sheets reported assets at values based upon the 1933 appraisals which had been found to be excessive, and the liabilities did not include any of the proofs of claim which totalled $440,549 in 1939. Petitioners having failed to prove an essential fact, namely, that the stock had value at the beginning of the taxable year, which fact is necessary to support a finding by us that the stock became worthless in 1941, respondent's determinations are sustained. Roosevelt Investment Corporation, 45 B.T.A. 440, 456. Decisions will be entered for the *272 respondent. Footnotes
1. Petitioners, Aaron and Shiphra Berman, Docket No. 7090, deducted the entire cost of their stock, $74,450, (the amount being incorrectly stated). The cost of their stock was $78,172.50. Samuel and Helen Joseph, Docket No. 7091, deducted one-half of the cost of their stock on their return.↩
2. In the schedule set forth in the findings of fact in which the receivers made a report on the proofs of claim which had been filed, it appears that the following claims were admitted to be due and valid by the receivers: ↩
Claims against which there were not offsets
$56,766.74
Claims in which no further investigation is needed
19,853.96
Accounts payable, judgments, etc.
15,167.43
Claim under agreement with Levine
1,985.69