EAGLETON v. COMMISSIONER OF INTERNAL REVENUE.

No. 11057.

Circuit Court of Appeals, Eighth Circuit.

May 27, 1938.

George M. Rassieur, of St. Louis, Mo., for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, WOODROUGH and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is a petition to review a redetermination of income taxes of petitioner for the calendar year 1932. The controversy involves the disallowance of two items claimed by petitioner as proper deductions from gross income in that year.

The first of these is a claimed deduction of $19,000 for payment of salary to James A. Waechter under the facts following. During the year 1932 Mr. Waechter was employed by petitioner at an annual salary of $24,000, payable $2,000 per month. During that year petitioner issued and delivered to Waechter twenty-two checks totalling $24,000. During the year, Waechter cashed five of these checks to the total amount of $5,000. In the latter part of 1932 negotiations were completed for the cessation of the business of petitioner, as an individual, to be replaced by a partnership, including Waechter and others, which was to commence January 1, 1933. The above salary checks were issued by petitioner with the intention that they should be cashed and he did not learn otherwise until sometime between November and the end of the year 1932, when the partnership arrangements were in course of negotiation. It was then agreed that the checks would be delivered by Waechter to the bookkeeper of petitioner's business, who was also to be the bookkeeper of the partnership, and that the funds represented thereby should pass into the partnership. The evidence is not entirely clear but the testimony of Waechter is that the understanding was that he should have the right to withdraw this $19,000 as he desired and that it was not to be his contribution to the partnership. There is no dispute that the checks covering this $19,000 have never been cashed and that there was no lessening of petitioner's funds in connection therewith during 1932. The books of petitioner were kept upon the cash basis and his tax returns made in accordance therewith. Whether a check given in payment is to be regarded as paid for tax purposes during the tax year of delivery, even though not cashed until afterward, where the taxpayer is on a cash basis, is not here involved.[1] The situation here is that these checks were not paid during 1932 and before the end of that year there was an understanding that they would not be paid during the year. In this situation there is no basis for a claim of deduction during that year where the tax return is on a cash basis. U. S. v. Mitchell, 271 U.S. 9, 12, 46 S.Ct. 418, 419, 70 L.Ed. 799.

Nor does the credit of the $19,000 on the partnership books aid petitioner. This credit was not made until January 1, 1933, when the partnership began. During 1932, all that took place concerning these checks was that the checks were issued from time to time and before the year end were returned in accordance with an understanding that they would not be cashed and they were not cashed.

The second item has to do with a claimed loss on the corporate stock of Bethlehem Pipe Fittings Corporation. That there was a total loss upon this stock is not challenged in the findings of the Board. The decision of the Board was to the effect that the burden of showing such a loss in a particular tax year rested upon the petitioner and that he had failed to sustain the burden of showing that this loss arose in 1932.[2] The facts as viewed by the Board and set forth in the footnote are abun-

---

[1] In Missouri, the residence of petitioner, the general rule is that a check is not payment until it is cashed. Johnson-Brinkman Commission Co. v. Central Bank, 116 Mo. 558, 570, 22 S.W. 813, 38 Am.St.Rep. 615; Montgomery County v. Auchley, 103 Mo. 492, 506, 15 S. W. 626; Groomer v. McMillan, 143 Mo. App. 612, 615, 128 S.W. 285; Carroll Exchange Bank v. First Nat. Bank, 58 Mo.App. 17. The rule is followed generally (Kansas City Life Ins. Co. v. Davis, 9 Cir., 95 F.2d 952, Apr. 8, 1938; 48 C.J. 617, § 50 and note 21).

[2] The statements of the Board in its opinion as to this matter are as follows: "In September, 1931, the Bethlehem Pipe Fittings Corporation ceased all manufacturing and business operations. There is no evidence before us to show what the financial status of the corporation was at that time, but it appears from the record that the directors of the corporation decided then that the venture was not profitable and should be discontinued. The petitioner was the chief financial backer of the corporation, a director, owner of 50 per cent of the preferred stock (according to his testimony), a creditor, and in close touch with those actively conducting the business. It is reasonable to assume that he was in a position to ascertain whether the corporation was solvent in 1931

dantly sustained by the evidence. The corporation was organized in 1930. The evidence is clear that all activity of the corporation ceased in September, 1931. At that time it had a factory with machinery as well as finished and unfinished stock. No disposition of the plant or any of this stock was made until early in 1932, but it is clear that all business activity ceased in 1931. It appears also that the business had been kept going during 1930 and 1931 by advances made to it by petitioner. The evidence shows such advancements prior to 1931 of $15,038.00; also, advancements during January, February, April, May, August and September, of 1931, in a further amount aggregating $8,613.20. In addition to this there were other advances (not itemized in the evidence) during 1930 and 1931 of $20,383.28, making total advances by petitioner to the corporation during the above two years of $44,034.48. February 27, 1932, the corporation conveyed all of its property and assets to petitioner in full payment of the above aggregate indebtedness. September 24, 1932, the board of directors of the corporation passed a dissolution resolution which was ratified in a stockholders meeting of October 22, 1932. In pursuance of the above corporate action the company was dissolved.

It might well have been concluded from the above evidence that the stock of petitioner in this corporation became worthless in 1931. It is certain that petitioner failed to sustain the burden of proof that such loss occurred in 1932. Such burden was upon him and the failure to sustain it justifies the disallowance of this deduction by the Board. Brown v. Helvering, 291 U.S. 193, 199, 54 S.Ct. 356, 359, 78 L.Ed. 725. This conclusion is not opposed to Burnet v. Imperial Elevator Co., 8 Cir., 66 F.2d 643. There "the company was to and did continue in operation thereafter" (page 645) while here there was no showing of any intention to operate after September, 1931, and there was no business of any kind continued thereafter.

The redetermination of the Board is affirmed and the petition to review will be dismissed.

and whether his stock had any value then, but the record is silent on this point. Petitioner at the hearing was put on notice by respondent that this item was disputed as a matter of fact and that proof as to facts was necessary.

"In 1932 the corporation was dissolved. Prior to its dissolution, all assets were transferred to the petitioner in payment of the indebtedness to him of $44,000. The only evidence relating to the aggregate value of the corporation's assets is petitioner's testimony that in his opinion they were worth approximately $20,000. These assets consisted principally of a building which had cost the corporation $15,000 and against which there was a first mortgage lien of $11,000, which petitioner assumed, machinery, and other equipment which had been used. From the evidence it is doubtful whether these assets had a value greater than the amount of the debt to petitioner. We are of the opinion that the stock was worthless in 1932.

"It is material to petitioner's contention to show that the stock in question had some value at the end of the year 1931 to overcome any presumption that the loss was sustained prior to the taxable year, 1932. The petitioner, in effect, has asked that this be assumed. However, it is certainly doubtful whether the assets transferred to petitioner in 1932 had any greater value at the end of 1931 than they had in 1932 and there is no evidence before us to show that the corporation had any other assets in 1931, or that it was in a better financial condition at the end of that year than in 1932. From the record and in the absence of evidence to show that the corporation was solvent at the end of 1931, we are unable to assume that the corporation was in fact solvent at the end of 1931. If the corporation was insolvent at the end of the year 1931, the loss on its stock was sustained in that year and petitioner should have deducted the loss in his return for the year 1931 without waiting until the corporation was liquidated or dissolved.

* * * * * * * *

"From a review of all the evidence, we are unable to determine that the claimed loss was sustained in 1932 so as to be deductible from gross income in the taxable year. The petitioner has failed to establish error in respondent's disallowance of the deduction. Therefore, the respondent's action in disallowing the loss for 1932 is approved."