**LASHELLS' ESTATE**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 11766.

United States Court of Appeals, Sixth Circuit.

Dec. 4, 1953.

Charles W. Steadman, Cleveland, Ohio (William F. Snyder, Cleveland, Ohio, on the brief), for petitioner.

Walter Akerman, Jr., Washington, D. C. (H. Brian Holland, Ellis N. Slack, A. F. Prescott and Dudley J. Godfrey, Jr., Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, as the Executrix of the Estate of R. W. Lashells, seeks a review of the judgment of the Tax Court adjudging a deficiency in the amount of $14,652.92 in income and victory taxes for 1943 through 1946, based largely on unreported taxable income, together with fraud penalties in the amount of $12,445.22.

Ralph and Marie Lashells were married in 1921. Ralph worked for several different companies in Youngstown and Toledo, Ohio, until 1940, at which time the family moved to Findlay, Ohio, where Ralph organized The Bearing and Transmission Company, hereinafter called the Company, to engage in the sale of mechanical and industrial equipment. All of the work in organizing and setting up the Company was performed by members of the Lashells family, with an original capital investment of between $600 and $800 saved out of the earnings of Ralph. Through 1941, Ralph spent the major portion of his time traveling in an effort to build up the Company's sales, and Marie worked regularly full-time in the store, assisted on a part-time basis by two of their children. She also worked frequently in the evenings.

During the latter part of 1941, the business of the Company expanded rapidly and needed additional capital. Marie had accumulated savings in the approximate amount of $2,500, a part of which she was willing to invest in the Company. Accordingly, the Company accountant prepared a partnership agreement, dated December 31, 1941, which was executed shortly thereafter by Ralph and Marie. This agreement recited a

contribution of $1,500 by Marie and provided that the parties would share equally in all profits and losses of the business. Thereafter, the books of the Company reflected separate partners' accounts for Marie and Ralph. The business expanded rapidly with Ralph continuing to travel a great deal of the time.

On January 1, 1945, Ralph Lashells and R. A. Snyder formed a partnership to engage in business under the name of Ohio Conveyor Company. The books of the Company recorded an investment of $4,150.67 of its funds in the Ohio Conveyor Company, and this investment was charged therein to the personal accounts of Ralph and Marie in equal amounts. Marie never performed any services for the Ohio Conveyor Company. In the individual income tax returns of Ralph and Marie for the years of 1945 and 1946 they each reported the following amounts as their distributive shares of the income of the Ohio Conveyor Company: 1945, Ralph $2,040.09, Marie $2,040.08; 1946, Ralph $1,517.71, Marie $1,517.22.

The business of the Company fell into three categories: (1) Sales of material from company inventory; (2) sales of material in which shipment was made from the factory to the customer but billed from the Company to the customer; (3) sales where the Company received a commission as manufacturer's agent, with shipment and billing from the manufacturer to the customer.

A bank account in the Company's name was opened at the Ohio Bank and Savings Company. Ralph also opened an individual account in his own name at the same bank in 1941, which was changed to a joint account of himself and Marie on February 18, 1942. In 1945, he opened a third account in the name of the Company at the First National Bank in Findlay. Receipts from the first two categories of sales above referred to were deposited in the business account of the Company at the Ohio Bank and Savings Company, except that during 1943 and 1944 the Company made several sales of merchandise not carried in its inventory, which were not recorded on its books, and the gross proceeds from which were deposited in the joint personal account with the net profit therefrom not being returned as income. Commissions growing out of the third category of sales were deposited in the joint personal account at the same bank during 1943 and 1944, and in both the joint personal account and the account at the First National Bank in 1945. From 1942 to July 1946, commission checks, although received at the office, were not recorded on the books of the Company. The Company received the following commissions: In 1943, $9,168.-19; in 1944, $15,675.54; in 1945, $24,-096.43. These commissions were not included in the federal income tax returns originally filed by Ralph for the years 1943, 1944 and 1945.

Ralph Lashells became very active in the community affairs of Findlay and gave a great deal of his time to a number of worthwhile civic activities. This, coupled with the rapid expansion of the Company's business, prevented him from handling the operating details of the business, which were largely turned over to other employees.

Prior to 1942, the bookkeeping of the Company was handled by Scott Elsea, a young, independent accountant, with limited experience, who came to the Company office once a month. He used the duplicate deposit slips and check stubs of the business account at the Ohio Bank and Savings Company in determining the amounts to enter as cash receipts and disbursements. In 1942, Ralph hired Marilyn Swisher who handled the bookkeeping until 1944. Subsequent to 1944 she divided the bookkeeping duties with a Miss Deter. All original entries to the cash receipts journal and the sales journal were made by these girls from checks handed to them or placed on their desks. Elsea continued to come to the office periodically. He verified the entries by checking them against the deposit slips of the business account at the Ohio Bank and Savings Company. He never saw any duplicate deposit slips of the joint

personal account in the Ohio Bank and Savings Company or of the Company account in the First National Bank. Ralph did not disclose to Elsea the existence of the commission income which was not deposited in the business account at the Ohio Bank and Savings Company.

Elsea prepared monthly financial statements for the Company based solely on the entries in the Company's books, together with the deposit slips from the business account. He prepared the income tax returns of the Company and of Ralph and Marie on the basis of the data contained in the financial statements. After preparation of the returns each year, Elsea placed them on Ralph's desk for signature and mailing. Ralph never commented to him in any way on the contents of the returns, and never called Elsea to discuss the figures contained therein.

During late 1944 or early 1945, Kenneth Moon, purchasing agent of the Daybrook Hydraulic Corporation, one of the Company's good customers, asked the Company to do some plating work for Daybrook. The Company was not equipped to do this work but Lashells arranged for the work to be done by the Findlay Plating Company, which company did the work and shipped the units to Daybrook. Lashells planned to handle this transaction without profit to the Company, by charging Daybrook the same amount that the Company was charged by Findlay Plating Company for doing the work. However, Moon made an arrangement with Lashells that the Company would bill Daybrook at a price of $1.00 per unit more than the sub-contractor's price and would turn this $1.00 per unit over to Moon. Daybrook paid the Company $18,017.55, covering the plating of 6,110 units. Of this amount, $11,907.55 was paid by the Company to Findlay Plating Company and the balance of $6,110 was paid to Kenneth Moon at the rate of $1.00 per unit. The payments to Moon were by cash without receipts being executed, and the Tax Court made a finding that they were made secretly without knowledge on the part of Moon's employer.

At about the same time, Moon also asked Lashells if he would undertake the manufacture of some cylindrical tanks for Daybrook. This transaction was entered into under the same understanding as the plating job except that the work was to be performed by the Ohio Conveyor Company and Moon was to receive a commission of $2.00 per unit. The actual delivery and billing was to Ohio National Company, a subsidiary of Daybrook. 2,710 units were ultimately produced and delivered to Ohio National Company, who paid the Company $22,497.75, of which amount the Company paid Moon $5,420. No profit was originally contemplated on this transaction, but decreased costs due to successive orders resulted in a profit of $8,108.75 being realized by the Company, after deducting costs and the payment to Moon.

In May 1946, a revenue agent commenced an investigation of the Company. He questioned the validity of the partnership and went to the Ohio Bank and Savings Company several times to inspect the ledger sheet of the joint personal account in order to verify Marie's alleged $1,500 contribution to the capital of the Company in 1942. The cashier of the bank never produced the ledger sheet, which would have disclosed deposits of unreported commissions. On July 3, 1946, the agent submitted his report without having seen the ledger sheet. After the interview with the revenue agent, Lashells caused the commission checks to be entered in the Books of the Company and consulted an attorney. The attorney recommended an accounting firm in Toledo, Ohio, which was employed to make a complete audit of the Company's books. Following the audit, the auditors prepared amended partnership and individual returns for the years 1943–1945 inclusive, in which commission income aggregating $48,258.20 was disclosed, and which were filed by Lashells in December 1946.

The Commissioner originally held that the Company was not a valid partnership,

and that the income from it was chargeable entirely to Ralph Lashells. This ruling was reversed by the Tax Court on the authority of Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, and that question is not before us on the present review.

The Tax Court sustained the Commissioner's contention that the Ohio Conveyor Company, formed by Ralph Lashells and R. A. Snyder on January 1, 1945, was a partnership between Ralph Lashells and Snyder in which Marie had no interest, with the result that 50%, instead of 25%, of the net income of that partnership for the years 1945 and 1946 was taxable to Ralph Lashells. Petitioner attacks this finding on this review, relying upon the bookkeeping entry of the Company showing an investment of $4,150.67 of its funds in the Ohio Conveyor Company, which investment was charged to the personal accounts of Ralph and Marie in equal amounts. However, no partnership agreement involving the Ohio Conveyor Company was described or introduced in evidence; no checks evidencing such an investment were introduced in evidence; Snyder, the other partner, was not called as a witness. There was a presumption of correctness which attached to the Commissioner's determination which placed the burden upon the taxpayer to prove the contrary. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. Bookkeeping entries are evidence to be considered, but they are not conclusive. Taxability depends upon the facts, not the bookkeeping entries employed by the taxpayer. Sitterding v. Commissioner, 4 Cir., 80 F.2d 939, 941; Northwestern States Portland Cement Co. v. Huston, 8 Cir., 126 F.2d 196, 199. We agree with the ruling of the Tax Court that this issue must be decided against the petitioner for failure to meet the burden of proof. Rogers v. Commissioner, 6 Cir., 111 F.2d 987; Christman Co. v. Commissioner, 6 Cir., 166 F.2d 1016.

The tax returns of the Company did not include any income resulting from the two transactions which the Company handled for the Daybrook Hydraulic Corporation through its purchasing agent Kenneth Moon. The Commissioner contends that that portion of the money received by the Company from Daybrook, constituting the $1.00 per unit and $2.00 per unit commissions which it thereafter paid to Moon, was income which should have been included in the Company's tax return, and that the payments made to Moon were not deductible expenses under § 23(a) of the Internal Revenue Code, 26 U.S.C.A. § 23(a), thus making these amounts net income taxable in their full amount. Petitioner contends (1) that these amounts were not income to the Company under § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), and (2) even if considered income the subsequent payments to Moon constituted expenses deductible under § 23(a) of the Internal Revenue Code. The Commissioner's contentions were sustained by the Tax Court.

The Tax Court referred to these payments as payments in the nature of bribes or graft, to which petitioner takes exception. We are of the opinion that it is immaterial to the decision of this point whether they are termed bribes or commissions. Illegality in the source of income does not prevent such income from being taxable. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037; Chadick v. United States, 5 Cir., 77 F.2d 961, 964, certiorari denied 296 U.S. 609, 56 S.Ct. 126, 80 L.Ed. 432; Humphreys v. Commissioner, 7 Cir., 125 F.2d 340. On the other hand, such illegality does not automatically result in such receipt of money being taxable income. Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 549, 90 L.Ed. 952. As stated in that case—"Moral turpitude is not a touchstone of taxability. The question, rather, is whether the taxpayer in fact received a statutory gain, profit or benefit. That the taxpayer's motive may have been reprehensible or the mode of receipt illegal has no bearing upon the application of Section 22(a)." See also Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769.

It is well settled that the mere receipt and possession of money does not by itself constitute taxable income. Familiar examples are borrowed money, rent collected by a rental agent, payment of a loss under an insurance policy, and a money judgment collected by an attorney for a client. "The very essence of taxable income, as that concept is used in Section 22(a), is the accrual of some gain, profit or benefit to the taxpayer. This requirement of gain, of course, must be read in its statutory context. Not every benefit received by a taxpayer from his labor or investment necessarily renders him taxable. Nor is mere dominion over money or property decisive in all cases. In fact, no single, conclusive criterion has yet been found to determine in all situations what is a sufficient gain to support the imposition of an income tax. No more can be said in general than that all relevant facts and circumstances must be considered." Commissioner v. Wilcox, supra, 327 U.S. at page 407, 66 S.Ct. at page 548.

■ Using this concept of taxable income, the Supreme Court adopted the "claim of right" rule for the purpose of determining whether the receipt and possession of money constituted income. This rule was expressed as follows in North American Oil Consolidated v. Burnet, Commissioner, 286 U.S. 417, at page 424, 52 S.Ct. 613, at page 615, 76 L.Ed. 1197: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged to restore its equivalent." This rule was restated in Commissioner v. Wilcox, supra, 327 U.S. at page 408, 66 S.Ct. at page 549, as follows: " * * * taxable gain is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain. Without some

bona fide legal or equitable claim, even though it be contingent or contested in nature, the taxpayer cannot be said to have received any gain or profit within the reach of Section 22(a)." The rule was recently approved and applied in United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560.

■ In the present case there was no claim of right by the Company to the commissions charged, collected and thereafter paid over by it to Moon. Although there may have been no enforceable obligation on its part to pay them to Moon after the collection by the Company, nevertheless the evidence shows without question that such was the agreement and that the agreement was promptly carried out. The absence of an enforceable obligation to pay the money to some one else is only one of the two conditions necessary to constitute income. There must also exist a "claim of right" on the part of the taxpayer. The performance of the agreement, whether legally enforceable or not, negatives the "claim of right." The amounts collected under the agreement with Moon were not used in the Company business, were never claimed by the Company as anything other than money to which Moon was entitled, and was in no sense money to which the Company made a claim of right in opposition to the claims of Moon. Both transactions were entered into without any intention of making a gain or profit, and the plating transaction was actually consummated without the making of any profit. The unexpected profit of $8,108.76 in the tank transaction is taxable income and should have been reported, but with that eliminated from the picture, the remainder of the transaction followed the original pattern of a non-profit transaction. Under somewhat analogous circumstances the Tax Court has held that, irrespective of the illegality of certain payments or the lack of necessity for making them, the actual lack of gain or profit in the transaction results in there being no taxable income in the gross proceeds realized by the

taxpayer. Lela Sullenger, 11 T.C. 1076. We are of the opinion that the Tax Court was in error in holding that these so-called commissions were taxable income. Commissioner v. Wilcox, supra; Horace Mill, 5 T.C. 691; C. W. Edwards, etc., 3 T.C.Memo. 1098 (1944); Richard T. Gillespie, 2 B.T.A. 1317; Mark D. Eagleton, 35 B.T.A. 551, 561–562, Id., 97 F.2d 62; James S. Muir, 3 B.T.A. 165. See also: Natural Gas Pipeline Co. v. Federal Power Commission, 7 Cir., 134 F.2d 263, 264; Central Life Assur. Soc. Mut. v. Commissioner of Internal Rev., 8 Cir., 51 F.2d 939, 941. Under such view of the case, it is unnecessary to consider whether the payments to Moon could be properly deducted as an ordinary necessary business expense under § 23(a) Internal Revenue Code.

 The Commissioner ruled that a part of the deficiencies as to each of the years involved was due to fraud. The Tax Court sustained the ruling. The petitioner contends that the evidence does not justify the ruling. The basis of this contention is that although the files reflecting the commission transactions were separate from the other files in the office, they were not locked, they were available to the accountant Elsea who prepared the returns, the office employees knew about these transactions, and that Ralph Lashells, by reason of his many civic activities and time devoted to traveling, relied upon Elsea to prepare correct income tax returns, and, in fact, disclosed this unreported income by amended tax returns following an audit by different auditors. On the other hand, the evidence also shows that the commission checks were not deposited in the Company bank account, were not given to the clerical employees for entry on the Company books and were not so recorded, that the amounts were substantial, that the failure to include them in the tax returns was not a mere omission in that it was repeated each year over a three-year period, that the treasury agent was not permitted to inspect the ledger sheet of the joint personal account at the bank which would have disclosed this unreported income, and that this income was not reported until after the government started its investigation. Rogers v. Commissioner, supra, 111 F.2d at page 989. It is pointed out that Ralph Lashells was a successful business man and was in close enough contact with the business of the Company and its approximate income to realize that the tax returns prepared by Elsea failed to reflect to a substantial degree the actual income of the Company, but that no questions were ever directed to the accountant about them. Halle v. Commissioner, 2 Cir., 175 F.2d 500, 503. Whether the returns were fraudulently made is a question of fact for the Tax Court. There is no burden on the government to prove the fraudulent intent beyond a reasonable doubt. Helvering v. Mitchell, 303 U.S. 391, 402–403, 58 S.Ct. 630, 82 L.Ed. 917. We are of the opinion that the findings on this phase of the case are not clearly erroneous and must be sustained. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751.

The judgment of the Tax Court is reversed with respect to the amounts received by the Company and paid to Moon as commissions in the plating and cylindrical tank transactions. Its judgment is affirmed in other respects. The case is remanded to the Tax Court for a redetermination of the tax liability in accordance with the views herein expressed.