Robert L. McCoy and Eva M. McCoy v. Commissioner. Curry Engineering Company v. Commissioner.
McCoy v. Commissioner
Docket Nos. 4926-69, 4927-69.
United States Tax Court
T.C. Memo 1971-34; 1971 Tax Ct. Memo LEXIS 296; 30 T.C.M. (CCH) 146; T.C.M. (RIA) 71034; February 23, 1971, Filed. *296 Held, numerous deductions for travel expenses, business promotion expenses, taxes, rental expense, dues and fees, advertising expenses and ordinary business expenses claimed by the individual petitioners, and the corporate petitioner are disallowed due to a failure of proof. Held further, the corporate petitioner is to be recognized as such despite its alleged failure to comply with State incorporation requirements and despite its status as a professional corporation. United States v. Empey, 406 F. 2d 157 (C.A. 10, 1969). Held further, the individual petitioners realized a gain on the transfer of partnership assets to and the assumption of liabilities by the corporate petitioner. Sec. 357(c), I.R.C. 1954. Orval Veirs, 219 Couch Dr., Okla. City, Okla., and Clyde J. Watts, for the petitioners. J.C. Linge, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated cases, the Commissioner determined deficiencies as follows: Petitioner
Year
Deficiency
Robert L. McCoy and
1964
$29,516.63
Eva M. McCoy
1965
15,398.82
Curry Engineering Co
FYE 9-30-65
2,877.23
The issues facing us are numerous. They are: I Did the petitioners, Robert L. McCoy and Eva *297 M. McCoy, understate income from Curry Engineering Co., a partnership, for the year 1964 in the amount of $59,903.92? This involves answering these five subsidiary questions. A. Should deductions claimed by the partnership for business promotion expenses be disallowed in the amount of $4,184.20? B. Should deductions claimed by the partnership for travel expenses be disallowed in the amount of $9,423.98? C. Should the partnership be allowed a deduction for taxes accrued in but not paid in the year 1964 in the amount of $2,572.86? D. Should the partnership be allowed deductions for business expenses incurred in the year 1964 totaling the amount of $14,166.95, for which checks were written and dated in December 1964 but not presented to the bank for payment during the year 1964 and all of which were in excess of funds on deposit in the partnership's bank accounts as of December 31, 1964? E. Should the partnership be allowed a deduction for employees' bonuses totaling the amount of $87,000? II Should the deduction claimed for taxes by Robert L. and Eva M. McCoy in the year 1964 be disallowed in the amount of $342.33? III Did Robert L. McCoy realize a gain on the exchange of partnership *298 assets for Curry Engineering Co. stock and the assumption of the partnership's liabilities by Curry Engineering Co. in the amount of $73,767.02, of which amount $73,625.77 is taxable as a long-term capital gain and $141.25 is taxable as ordinary income? 147 IV Should the deduction claimed by Curry Engineering Co. for rental expense be disallowed in the amount of $1,675? V Should deductions claimed by Curry Engineering Co. for dues and fees be disallowed in the amount of $838? VI Should deductions claimed by Curry Engineering Co. for advertising and entertainment be disallowed in the amount of $3,610.29? VII Should deductions claimed by Curry Engineering Co. for travel expenses be disallowed in the amount of $5,398.38? VIII Should the deduction for contributions claimed by Curry Engineering Co. be limited to five percent of taxable income computed without regard to the deduction for contributions? IX Should Curry Engineering Co. be recognized as a corporation for the purpose of determining its income tax liability and the income tax liability of Robert L. and Eva M. McCoy? Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated *299 herein by this reference. Robert L. McCoy and Eva M. McCoy (hereinafter referred to as the petitioners) are husband and wife whose legal address, as of the date the petition was filed herein, was Oklahoma City, Oklahoma. For the taxable years 1964 and 1965, they filed joint Federal income tax returns with the district director of internal revenue at Oklahoma City, Oklahoma. Curry Engineering Co. (hereinafter referred to as the corporation) is a corporation, incorporated under the laws of the State of Oklahoma on January 1, 1965. Its principal place of business, as of the date it filed its petition herein, was Oklahoma City, Oklahoma. It filed its Federal income tax return for the years ended September 30, 1965, 1966, 1967 and 1968 with the district director of internal revenue at Oklahoma City, Oklahoma. During the calendar year 1964, Robert L. McCoy (hereinafter referred to as McCoy) and James E. Curry were equal members of a partnership, Curry Engineering Co. (hereinafter referred to as the partnership), through which they functioned as consulting engineers. The partnership's principal place of business was located in Muskogee, Oklahoma and it filed its partnership return of income *300 for the year 1964 with the district director of internal revenue at Oklahoma City, Oklahoma. It filed no partnership returns of income for any period following the calendar year 1964. On January 1, 1965 the partnership transferred its assets to the corporation in exchange for capital stock, and the corporation assumed the partnership's liabilities. The petitioners reported no gain and no loss on such transfer. The corporation had authorized capital stock consisting of 20,000 shares of voting common stock and 20,000 shares of nonvoting common stock, with an assigned value of $10 per share for each series of such stock. On January 1, 1965 the corporation issued 10,200 shares of the voting common stock to Curry and issued 9,800 shares of the voting common stock to McCoy. In the exchange of assets by the partnership for the corporation capital stock and the assumption of liabilities by the corporation, the assets transferred and the liabilities assumed by the corporation were as follows: Assets
Prepaid interest
$ 8,156.79
Furniture and equipment
$84,251.47
Less depreciation
58,751.27
25,500.20
Autos and trucks
93,497.38
Less depreciation
69,681.28
23,816.10
*13 Total (adjusted basis)
$ 57,473.09
Liabilities
Cash overdraft
$107,439.75
Accrued payroll tax
2,572.86
Retirement payable
102.84
Notes payable
98,793.36
Total liabilities
$208,908.81
Liabilities in excess of assets
$151,435.72
*301 The cash overdraft in the amount of $107,439.75 includes: (a) Checks issued in payment of ordinary deductible expenses totaling the amount of $14,166.95; (b) Checks issued to J.E. Curry and R.L. McCoy as withdrawals totaling the respective amounts of $5,087.24 and $1,185.56; and (c) Checks issued to 18 key employees totaling the amount of $87,000. These checks were endorsed by the respective 148 recipients and returned to the partnership. None of them were ever presented to the bank for payment. The partnership kept its books and accounted for its income on the cash basis of accounting. Robert L. and Eva M. McCoy reported their taxable income on the cash basis of accounting. The corporation kept its books and accounted for and reported its income on the cash basis method of accounting. Neither the partnership nor the corporation kept records pertaining to deductions claimed for business promotion, entertainment and travel which would show the (a) Amounts; (b) Time, date and place of entertainment; (c) The business purpose for the claimed entertainment or the nature of the business benefit derived or expected to be derived as a result of the claimed entertainment; (d) The name and address *302 or location of the facility used in connection with the claimed entertainment and the type of entertainment; (e) The occupation or other information relating to the person or persons claimed entertained, including the name, title or other designation sufficient to establish a business relationship to the petitioners in these cases; (f) The business relationship between the partnership and the persons claimed to have been entertained; (g) The date of departure and return for each trip away from home and the number of days away from home; (h) The name of the city or town or identification of the locality visited in connection with the claimed travel expenses; and (i) The business reason for travel or the nature of the business benefits derived or expected to be derived as a result of the claimed travel. On January 1, 1965 the partnership transferred all of its assets to the corporation and the corporation assumed all of the partnership's liabilities, including the bank overdraft. The partnership had no bank checking account after January 1, 1965. The partnership wrote checks payable to 18 of its employees, all of which are dated December 31, 1964, totaling the amount of $87,000. The *303 18 checks were endorsed and returned to the partnership. Pursuant to agreements none of such checks was presented to a bank for payment by the employees. The partnership issued debentures to the employees in amounts that corresponded to the amount of the returned checks. The notes were signed by James E. Curry and Robert L. McCoy as partners of Curry Engineering Co. The notes, except names of payees and amounts, were identical. The employee chose the amount of bonus for which a check was written, endorsed and returned. For example, Daniel F. Seniura chose the amount of $6,000 and later received the amount of $2,300 in full payment of the note issued to him on January 6, 1965. The debentures were issued to redeem the checks issued to the employees. The bonus checks and notes were issued to the employees to improve employee morale, provide a substitute for a retirement program, and decrease the income tax liability of Curry and McCoy. Each of the 18 employees agreed to report the amount of bonus in his Federal income tax return as taxable income for the year 1964. The partnership withheld no income tax with respect to the bonus checks issued in 1964. The notes or debentures are dated *304 January 6, 1965 and contain contingencies regarding payments to the employees as follows: The said Curry Engineering Company agrees to pay the amount aforesaid upon the first to occur of any of the following conditions: (a) The death of James E. Curry, or (b) The death of the key employee, or (c) The permanent and total disability of the key employee, or (d) Upon the key employee attaining the age of sixty-five (65) years. In the event of the termination of the employment for any reason of the key employee, except the occurrence of any of the four conditions above specified, Curry Engineering Company reserves the right in the sole discretion of Curry Engineering Company to pay to the key employee all or any part of the principal sum aforesaid and upon such terms and upon such conditions as the Company in it's [sic] discretion shall determine; provided however nothing herein contained shall be construed as relieving the Company of it's [sic] obligation to pay the principal sum upon the occurrence of any one of the four conditions above enumerated. Payments were made by the corporation on the notes issued by the partnership as follows: 149 Date Paid
Key Employee
Amount Paid
Face Amount ofNote
11-30-66
Johnny Cooper
$ 1,000
$ 5,000
1-30-67
Homer Frazier
1,500
5,000
2-15-67
Beveline Mitchell
500
1,000
8-30-67
Velma Hemperley
1,000
3,000
Jan. 68
Velma Hemperley
100
Feb. 68
Velma Hemperley
100
Mar. 68
Velma Hemperley
100
Apr. 68
Velma Hemperley
100
May 68
Velma Hemperley
100
June 68
Velma Hemperley
100
July 68
Velma Hemperley
100
Aug. 68
Velma Hemperley
100
9-4-68
Velma Hemperley
100
9-9-68
Velma Hemperley
100
10-1-68
Velma Hemperley
100
11-1-68
Velma Hemperley
100
Oct. 67
Daniel F. Seniura
2,300
6,000
Mar. 68
Carl L. Waldrop Est.
5,000
5,000
Totals
$12,500
$25,000
The *305 corporation, Curry and McCoy entered into agreements dated September 19, 1967 and November 6, 1968 pursuant to which Curry exchanged his corporation stock for corporation assets and assumed the balance due on the employee notes as of November 6, 1968 in the amount of $62,800. Since November 6, 1968 Curry has paid on notes issued to employees the amount of $6,800. Curry intended that the corporation assume the liability for paying the debentures issued to the employees and he intended the obligation to pay such debentures to be a valid liability of the corporation. During the period from January 1, 1965 to September 30, 1965 and later years, the corporation actively engaged in incomeproducing activities; had duly elected officers and had employees to whom it paid salaries and wages; kept books of account and maintained bank accounts; entered into contracts in its own name; filed Federal income tax returns for the period ended September 30, 1965 and later years; and paid tax on the income it reported. During the period January 1, 1965 to September 30, 1965, the corporation paid a salary to McCoy in the amount of $14,250. The corporation claimed a deduction for dues and fees which included *306 the following items: (a) Cash payment made to Curry in the amount of $200. (b) Payment to the Oklahoma State University Alumni Association in the amount of $5. (c) Payment to Ben Dickson in the amount of $3. Curry informed the examining agent that he had kept a diary which contained information regarding travel and entertainment expenses but he, Curry, would not show the diary to the agent or any other person. As of December 31, 1964 the partnership had accrued unpaid payroll taxes totaling the amount of $2,572.86. This liability was assumed by the corporation on January 1, 1965. Prior to January 1, 1965 the partnership issued checks to Curry and McCoy, totaling the amount of $6,272.80, which were in excess of funds on deposit in the partnership bank account as of December 31, 1964. In the statutory notice the Commissioner determined that the partnership understated income for the year 1964 in the amount of $119,807.85 and that McCoy understated his taxable income for the year 1964 in the amount of $59,903.92, which is one-half of the amount of $119,807.85. The adjustments involved are as follows: a. Dues and fees
$ 2,439.86
b. Business promotion
4,184.20
c. Travel
9,423.98
d. Repairs
20.00
e. Unpaid expenses
103,739.81
Total
$119,807.85
Opinion *307 The issues involved herein can be broken down into three main subdivisions: those relating to the partnership, Curry Engineering Co.; those relating to the individuals, Robert L. and Eva M. McCoy; and those relating to the corporation, Curry Engineering Co. Our resolution of these issues shall proceed in the above order. The Partnership The major issue involving the partnership relates to an understatement of income 150 therefrom by the individual petitioners in the amount of $119,807.85, broken down as follows: Item
Amount
Dues and fees
$ 2,439.86
Business promotion
4,184.20
Travel
9,423.98
Repairs
20.00
Unpaid expenses
103,739.81
Total
$119,807.85 The individual petitioners' share of the above understatement is $59,903.92, and they have conceded the claimed deductions for dues and fees, and repairs. Proceeding to the remaining items in dispute: Business Promotion Expenses The claimed deduction herein is for $4,184.20. The petitioners have conceded $2,515.88 of the above. This leaves $1,668.32 in dispute. That amount consists of two categories of expenditures, the first being $668.32 claimed as entertainment expense and the second being $1,000 claimed as being a promotion expense paid to one *308 H.E. Bailey. As to the $668.32 claimed as entertainment expenses, deductions for items of this nature are governed by section 274, I.R.C. 1954. [1] That section, in addition to other numerous requirements, provides that no deduction is to be taken unless the taxpayer substantiates either by adequate records or sufficient evidence to corroborate his own statement - (1) the amount, (2) the time and place, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of the person entertained. Sec. 274(d). The regulations under section 274 delve into the specifics of the recordkeeping required, but their citation here would serve no purpose. Suffice it to say that petitioners' evidence falls far short of that required by the Code or allowed by the Second Circuit in LaForge v. Commissioner, - F. 2d - (C.A. 2, 1970). The only evidence presented was the testimony of Curry who in effect stated that the expenses were for business purposes. Such is obviously insufficient to support the deduction. In the absence of adequate records the deduction cannot stand. As to the $1,000 *309 paid to H.E. Bailey, the only explanation of this item is a statement appearing on the partnership books stating: Educational program pursuant to $500,000,000.00 Bond Issue relative to Roads and Education. Primary Farm-to-Market Turnpike Expansion Educational Program, Glen Key, Treas. (Giant Stride-Organization to provide Bond Issue). The Commissioner contends this payment was made to influence the general public or a segment thereof, with respect to legislative matters. Sec. 162(e)(2). Petitioners offer no evidence in contradiction and we therefore must sustain the disallowance of the item as a deduction. Travel Expenses The claimed deduction herein is in the amount of $9,423.98. Of that amount, petitioners concede $2,400, such being sums paid for entertainment in Mr. Curry's home. The amount of the claimed deduction (including the $2,400 mentioned above) is represented by 11 checks issued to James E. Curry. Travel expenses also fall within the purview of section 274, discussed in the preceding section. Again petitioners have failed to carry their burden of proof. The only evidence offered consisted of 12 summary expense sheets and Curry's testimony that the expenses were for business *310 reasons. Curry did state, however, to the examining internal revenue agent, that he had kept a diary which would furnish additional information but he did not produce this document. Therefore, we must disallow the claimed deductions for the same reasons applicable to the promotion expenses, failure to prove the amounts claimed in accordance with the Code and regulations. Taxes This item, in the amount of $2,572.86, relates to payroll taxes accrued in 1964 but not paid until 1965 (when they were paid by the corporation). Since the partnership used the cash basis of accounting and further since the corporation assumed this liability upon its formation, no deduction is allowed to the partnership in 1964. Sec. 461(a); sec. 1.461-1(a)(1), Income Tax Regs.
Unpaid Expenses As of December 31, 1964, there were unpaid checks of the partnership in the 151 amount of $107,439.75. The total consisted of the following: Type
Amount
Ordinary Expenses
$ 14,166.95
Partners Drawing
6,272.80
Bonus
87,000.00
Total
$107,439.75
The checks totaling $14,166.95 were dated during 1964 and were issued for the payment of ordinary and necessary business expenses incurred prior to December 31, 1964. As of January 1, 1965, *311 the partnership ceased to exist, being replaced by the corporation which took over the assets and assumed the liabilities of the partnership. Petitioners contend that issuance and delivery of the checks constituted conditional payment of the expenses, which upon presentation and payment in the ordinary course of business became absolute and related back to the time of delivery. Mark D. Eagleton, 35 B.T.A. 551 (1937), affd. 97 F. 2d 62 (C.A. 8, 1938). To prevail on its theory, petitioners had to show that the delivery was effectuated during 1964. The only evidence consists of copies of the checks and a summary sheet thereof. The latter document is of no aid. The copies of the checks, however, do contain many markings and stamps affixed by the various parties to the transaction by check. Some of these, teller's stamps indicating the date presented, etc., would indicate that certain checks were delivered during 1964 and therefore would come within the ambit of petitioners' theory. The following list, showing check number, date, the payee and the amount of the check, represents all those checks which are within the purview of petitioners' argument: Check
Date
No.
(1964)
Payee
Amount
3386
12-26
Voerster, Charles Allen
$ 150.50
3390
12-26
Smith, Sidney H.
154.27
3393
12-26
Campbell, Jo Beth
128.20
3395
12-26
Compassi, Lena Marian
105.95
3396
12-26
Cooper, Johnny Ray
153.28
3401
12-26
Harris, A.V.
94.27
3402
12-26
Hathcoat, Joseph
97.12
3403
12-26
Hemperley, Velma
99.19
3404
12-26
Jameson, Jimmie Wayne
224.24
3405
12-26
Ledford, Jerry Wayne
54.19
3407
12-26
Long, June Yvonne
85.31
3415
12-26
Osburn, Andy H.
156.52
3418
12-26
Rosson, Edward Lee
103.61
3420
12-26
Scott, Basil E., Sr.
229.91
3421
12-26
Scott, Basil E., Jr.
166.05
3425
12-26
Slayton, Robert Owen
190.09
13128
12-26
Andy H. Osburn
20.00
13129
12-29
Muskogee County Tax Agent
186.25
12915
12-28
Albert Dyer, Treasurer
685.56
13137
12-30
Roy W. Entz
40.57
$3,125.08
*312 As to these checks, we believe petitioner is entitled to the claimed deduction since the president of the bank in which the partnership and then the corporation maintained its account testified that the checks would be honored when presented for payment. This is so despite what the Commissioner contends is a contrary holding in Mark D. Eagleton, supra. He says that case holds that, in a similar factual setting, a change in bank accounts by the drawer from his individual name to that of a partnership as of January 1 operated to disallow the deduction since the drawer no longer maintained an account when the checks were paid by the drawee-bank. This overlooks the theory of conditional payment stated above, which was favorably discussed in Mark D. Eagleton, supra, but did not form the basis of the decision therein. That decision was that the establishing of a credit on the books of the partnership therein, in the amount of the checks unpaid at the year's end, operated to nullify the theory of conditional payment since the credit was in effect another means of payment. As to the other checks which bear no such markings or their markings indicate delivery in 1965, petitioners' theory fails *313 and the deduction is disallowed. The next unpaid expense item involved herein is that of employees' bonuses, in the 152 amount of $87,000. Petitioners contend, as above, that the checks totaling the $87,000 should be allowed as deductions in 1964 since the checks were issued in that year and were subsequently honored by the bank. The action of the employees in endorsing their checks back to the partnership and accepting debentures in lieu thereof is the same, say the petitioners, as if the checks had been cashed and the cash therefrom loaned to the corporation. With this we cannot agree. We have the testimony of one of the employees, Mr. Seniura, and that of the petitioner, Mr. McCoy, to the effect that it was understood that the checks were not to be cashed, but rather were to be endorsed over to the partnership and the employee would be issued a debenture in the face amount of his "bonus" check. This agreement, not to cash the checks, whether it be tacit or formal is fatal to the claimed deduction. Mark D. Eagleton, 97 F. 2d 62, 63 (C.A. 8, 1938): The situation * * * is that these checks were not paid during 1932 and before the end of that year there was an understanding that they *314 would not be paid during the year. In this situation there is no basis for a claim of deduction during that year where the tax return is on a cash basis. U.S. v. Mitchell, 271 U.S. 9, 12. We have been given no evidence relative to the partners drawing items totaling $6,272.80. In such circumstances the Commissioner's determination must be sustained. The Individual Petitioners Taxes Petitioners offered no evidence whatsoever as to the claimed deduction for taxes in the amount of $342.33. The Code, section 162(a)(1), (2), allows deductions for taxes paid during the year. In the absence of proof on this item, the deduction cannot stand. Gain on Incorporation The Commissioner alleges that there was an exchange of partnership assets for the corporation's stock, that the corporation assumed all of the partnership liabilities and the petitioners realized a taxable gain thereby. Petitioners contend that the liabilities assumed by the corporation should be in the amount of $121,908.81 at most since the liability for the $87,000 worth of bonuses was not one of the liabilities assumed. Yet Mr. Curry, in testifying as to the corporation's posture after 1965, stated that he always intended the *315 liabilities to be valid. In view of the lack of any evidence to support petitioners' contention, coupled with Curry's testimony, [2] we find that the $87,000 worth of bonuses were liabilities assumed by the corporation [3]
Having resolved the preliminary question, we turn our attention to the question of gain to be recognized. Section 357(c) provides an exception to the general rule of section 351(a) that no gain or loss is to be recognized when property is exchanged for stock and the transferor is thereafter in control of the corporation. This exception is as follows: SEC. 357(c). Liabilities in Excess of Basis. - (1) In general. - In the case of an exchange - (A) to which section 351 applies, * * * if the sum of *316 the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be. That is the case here and the gain is to be recognized. Since petitioners do not question the Commissioner's computation, but only raised an objection to the amount of liabilities assumed, there is no need for further discussion. The Corporation
Rent Expense
This claimed deduction involves the following items:
(a) Rent expense accrued to the partner- ship during 1964 for rent of
$ 400
office for Curry
(b) Rent expense accrued to the partner- ship during 1964 for rent of
500
a car for Curry
(c) Payments to Curry in 1965 for rent of a car for him
775
Total
$1,675 As to the rental items relative to the partnership, there is no evidence to show that the corporation rather than the partnership incurred such expense, therefore, the deduction must fall. As to the amount paid Mr. Curry, again there was no evidence presented as to this item, hence *317 it too must be disallowed. Dues and Fees Of the total amount initially in dispute, $838, $580 paid as an incorporation fee and $50 paid as a contribution are no longer in issue. This leaves $208 for resolution. Two hundred dollars of this amount is alleged to be an entertainment item paid to Curry and discussed elsewhere in this opinion. It is not allowed. The remaining $8 includes a $5 item to the Oklahoma State University Alumni Association and $3 to Ben Dickson, a golf professional. The corporation concedes the latter amount. As to the former, we have no evidence of its nature and hence it too is disallowed. Advertising and Entertainment Involved here are cash payments to Curry in the amount of $1,450; contributions totaling $905 (which have been conceded by the corporation); payments to the Muskogee Golf and Country Club, the Albuquerque Golf and Country Club, Ben Dickson, various other clubs; and miscellaneous small items. Similar items were discussed in relation to the partnership and there they were conceded by the petitioners. Again no evidence is offered to overturn the Commissioner's determination, and on the grounds discussed relative to the partnership and on the lack *318 of evidence, the deductions are not allowed. Travel Expenses The amount is $5,398.38. This again is similar to a partnership issue. Again, there is no evidence and again the same Code provisions are applicable. Accordingly, these deductions are disallowed. Deduction for Contributions The statutory notice allows a deduction for contributions in an amount which is five percent of the corporation's taxable income computed without regard to such deduction. Sec. 170(b)(2). No evidence was presented on this issue as to the impropriety of the Commissioner's determination, therefore it is sustained. Recognition of Curry Engineering Co. as a Corporation The final issue herein relates to the recognition of Curry Engineering Co. as a corporation for determining its tax liability and that of the individual petitioners Robert L. and Eva M. McCoy. The petitioners assert two grounds for holding that Curry Engineering Co. should not be recognized as a corporation for Federal tax purposes. The first ground is the alleged failure of the company to comply with certain provisions of the Oklahoma Business Corporation Act, the recitation of which would serve no useful purpose. Suffice it to say that *319 such an argument is totally without merit. If there was such a failure, it is of concern to the State of Oklahoma and not this Court. The petitioner may not rely upon its self-asserted failure to comply with its own State law to avoid the effect of a Federal tax statute. Lodi Iron Works, Inc., 29 T.C. 696, 701 (1958). The second ground advanced is that the regulations under section 7701, commonly referred to as the "Kintner" regulations, make it impossible for a professional service corporation to be classified as a corporation for Federal tax purposes. Again, this line of argument is fruitless. The facts, as set out in our findings, clearly show that a valid corporation existed and was so intended by Curry and McCoy. Further, a long series of cases, e. g. United States v. Empey, 406 F. 2d 157 (C.A. 10, 1969); O'Neill v. United States, 410 F. 2d 888 (C.A. 6, 1969), whose results negated the intent of the regulations, caused the Government to concede its former position and recognize professional corporations as corporations. We feel that petitioners' fate, had they had the opportunity to litigate this issue before the Government's concession, would have been the same as similarly *320 situated taxpayers, that is, recognition as a corporation. Their argument that the corporation was not what it claimed to be until it successfully contested an adverse determination by the Commissioner is wholly baseless. Accordingly, to reflect the concessions and determinations herein, Decisions will be entered under Rule 50. 154 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. Petitioners' witness, John O. Moffitt, a lawyer, certified public accountant and professor, testified that the liability for $87,000 worth of bonuses was assumed by the corporation. ↩
3. Between November 30, 1966 and March 1968, the corporation paid $12,500 in respect of $25,000 face amount of debentures. Further, Curry testified that in his agreement with McCoy in 1968 relative to his exchanging stock for the corporation's assets, he agreed to pay off the balances on the notes.↩