WALT WILGER TIRE CO., INC. and J. W. BREWER TIRE CO., INC., SUCCESSOR IN INTEREST TO WALT WILGER TIRE CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walt Wilger Tire Co. v. Commissioner
Docket No. 4456-76.
United States Tax Court
T.C. Memo 1979-66; 1979 Tax Ct. Memo LEXIS 457; 38 T.C.M. (CCH) 287; T.C.M. (RIA) 79066; February 28, 1979, Filed John P. Dwyer, for the petitioner. Thomas M. Ingoldsby, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's income taxes for the years 1972 and 1973 in the amounts of $ 13,988.12 and $ 4,888.28, respectively. The sole issue for decision is whether petitioner's contributions to its profit-sharing plan were timely made under section 404(a)(6) [1] and, therefore, deductible during the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing its petition herein, petitioner, Walt Wilger Tire Company, maintained its principal office in Albuquerque, New Mex. [2] Walt Wilger Tire Company was a New Mexico corporation engaged in selling, distributing, retreading and servicing tires. The corporation filed its income tax returns on a calendar year basis using the accrual method of accounting. Its return for 1972 was filed on or before March 15, 1973, and *459 its return for 1973 was filed on or before March 15, 1974. Effective January 1, 1970, the petitioner established a profit-sharing plan for its employees known as the "Walt Wilger Tire Company Employees Profit Sharing Trust" (hereinafter the plan). A request for a determination as to whether this plan qualified under section 401 was not made by petitioner until after the years in issue. However, for purposes of this case, the parties agree that the plan was qualified under section 401 during 1972 and 1973. On March 14, 1973, one of petitioner's clerical employees prepared a check in the amount of $ 29,141.90 payable to the plan. The following year on March 15, 1974, a check in the amount of $ 39,325.83 payable to the plan was also prepared by one of petitioner's clerical employees. Both checks were drawn on the petitioner's checking account at the Albuquerque National Bank and signed by Jack P. Wilger (Wilger). Wilger was the petitioner's vice president and general manager. In connection with his *460 duties as vice president and general manager, Wilger kept himself informed as to the financial status of the company. In addition, Wilger was a trustee of the petitioner's profit-sharing plan. After these checks were prepared, Wilger kept them in his possession by placing them in a drawer of the credenza in his office. The check dated March 14, 1973, was subsequently deposited in the plan's checking account on May 16, 1973, and paid by petitioner's bank on the same day. The check dated March 15, 1974, was deposited in the plan's account and paid by petitioner's bank on March 29, 1974. During the years in issue, the petitioner had a line of credit at the Albuquerque National Bank. One of the benefits of this line of credit was overdraft protection. If petitioner issued a check that created an overdraft, the bank would credit the petitioner's account for the amount of the overdraft, thus, permitting the check to be paid. A promissory note which petitioner had been required to sign was then debited in the same amount. In addition, petitioner was required to pay interest on any amounts advanced against its line of credit. From January 1973 to May 1973, the petitioner's line *461 of credit was $ 100,000. From May 1973 through March 1975, the petitioner's line of credit was $ 250,000. During both March 1973 and March 1974, petitioner found it necessary to use its line of credit to pay its outstanding checks. In March of 1973 petitioner received a $ 40,000 advance against its line of credit and in March of 1974 petitioner received a $ 50,000 advance against its line of credit. Petitioner made no repayment of any portion of these advances during the months they were made. On its 1972 Federal income tax return, the petitioner claimed a deduction of $ 29,141.40 for the contribution made to its profit-sharing plan in 1973. On its 1973 Federal income tax return, petitioner claimed a deduction of $ 39,325.83 for the contribution made to its profit-sharing plan in 1974. The respondent, in his statutory notice, disallowed both deductions for the years claimed on the ground that the contributions were not timely made. OPINION The only issue for decision is whether petitioner's contributions to its profit-sharing plan were timely made under section 404(a)(6) and, therefore, deductible during the years in issue. Under section 404(a) employers are permitted *462 to take a deduction for amounts contributed to a pension or profit-sharing plan for the benefit of their employees subject to certain restrictions. Section 404(a)(1) and (3). Generally the deductions are allowable only for the year in which the contributions are actually paid regardless of the taxpayer's method of accounting. Section 1.404(a)-1(c), Income Tax Regs. However, for taxpayers on the accrual basis, section 404(a)(6) modifies this rule to some extent.It provides that a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof). [3] Thus, an accrual basis taxpayer must actually pay out cash or its equivalent by the end of the grace period in order to qualify for the section 404(a) deduction. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579 (1977).
*463 In light of these requirements, the pivotal question in this case is whether the petitioner actually paid the contributions for 1972 and 1973 before March 15, 1973, and March 15, 1974, respectively. Petitioner's contribution for 1972 was made by check dated March 14, 1973. After the check was prepared Wilger placed it in a drawer of his credenza. This check was subsequently deposited in the plan's checking account and paid by petitioner's bank on May 16, 1973. Similarly, petitioner's contribution for 1973 was made by check dated March 15, 1974. Wilger also placed this check in a drawer of his credenza once it had been prepared.Thereafter, on March 29, 1974, this check was deposited in the plan's account and paid by petitioner's bank on this same day. As a general rule a check constitutes payment when it is delivered to the payee. Estate of Spiegel v. Commissioner, 12 T.C. 524, 529 (1949). If, however, the check is not paid in the ordinary course of business or at least delivered to the payee without restriction on payment, the general rule is inapplicable and the check will not constitute payment until it is actually paid. Estate of Spiegel v. Commissioner, supra, at 530. *464 Similarly, if there is an understanding that a check will not be presented for payment in due course, no payment is considered to have been made until the check is actually paid. Eagleton v. Commissioner, 97 F.2d 62 (8th Cir. 1938). In the present case, petitioner maintains that the checks were delivered to a trustee of the plan within the statutory grace period and, thus, the contributions were timely made. Petitioner argues that since Wilger was both an officer of the company and a trustee of the plan, the only logical conclusion is that when he placed the checks in the drawer of his credenza after signing them, he effectively delivered the checks to himself as trustee of the plan. [4]
*465 Respondent, on the other hand, contends that Wilger did not sign the checks on or before March 15, 1973, and March 15, 1974, and since a check must be signed to constitute payment, petitioner's payment of the contributions was, therefore, not timely made. Alternatively, respondent contends that if the checks were timely signed, the petitioner is still not entitled to the deductions in the years claimed because the checks were not timely delivered to the payee, the plan, free and clear of any restrictions as to time of payment.According to respondent, the petitioner had serious cash flow problems during March 1973 and March 1974 of which Wilger was aware. Consequently, Wilger held the checks until there were sufficient funds in the company's checking account to pay these checks and, thereby, avoid aggravating the cash flow problems. Respondent, therefore, concludes that at the time Wilger allegedly delivered the checks to himself as trustee, the checks were subject to a restriction as to time of payment and, hence, the contributions to the plan were not timely made. Assuming arguendo that Wilger timely signed the checks and delivered them to himself as trustee, we conclude that *466 petitioner's plan contributions for 1972 and 1973 were not actually paid within the period permitted under section 404(a)(6) because neither check was delivered without restriction on payment during this period. Wilger, petitioner's vice president and general manager, testified that the delay in payment was simply due to the fact that he did not get around to making the deposits for some time after writing the checks. However, considering that as a trustee of the petitioner's profit-sharing plan, Wilger had a fiduciary duty to properly manage company contributions to the plan, [5] we find it difficult to believe that Wilger kept the checks in his office when they should have been in the plan's account earning interest merely because he did not "get around" to depositing them. Although the record could be more complete, the evidence presented indicates that during March 1973 and March 1974 the petitioner was having difficulties meeting its obligations with cash on hand. This is illustrated by the fact that the petitioner received substantial advances against its line of credit during these two months. *467 Such evidence supports respondent's argument that since Wilger was aware of the petitioner's cash flow situation during March 1973 and March 1974 he delayed depositing the checks until there were sufficient funds in the company's checking account to pay these checks in order to avoid aggravating the petitioner's financial condition. Respondent, therefore, concludes that while Wilger allegedly held the checks as trustee, the checks were subject to a restriction on payment and, hence, the contributions to the plan were not timely made. Petitioner, who has the burden of proof, failed to offer any evidence which would satisfactorily explain these delays in depositing the checks. Consequently, the petitioner has not satisfied this burden. Simply put, until Wilger deposited the checks in the plan's account or gave the checks to another individual for deposit in the plan's account, the time of payment was wholly within his control.We believe such retention of control over the checks clearly constitutes a restriction on the time of payment. Accordingly, we hold that the petitioner's contributions for 1972 and 1973 were not timely made and, hence, are non-deductible in the years claimed. *468 [6]
To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended, and in force during the years in issue.↩
2. On September 19, 1977, the petitioner, Walt Wilger Tire Company, completed a merger with the J. W. Brewer Tire Company in which the latter was the surviving corporation.↩
3. Section 6072(b) provides that returns of corporations made on the basis of the calendar year shall be filed on or before the 15th day of March following the close of the calendar year.↩
4. In support of its argument, petitioner cites Dick Bros., Inc. v. Commissioner, 205 F.2d 64 (3d Cir. 1953), revg. 18 T.C. 832↩ (1952). In this case the sole issue was whether the taxpayer's pension plan contribution check had been delivered to the trustee within the statutory grace period. It is, therefore, distinguishable from the present case because the issue here is not simply whether the checks were delivered but whether they were delivered without any restrictions as to time and manner of payment.
5. See the Employee Retirement Income Security Act of 1974, sec. 404(a).↩
6. We note that the respondent allowed the $ 29,141.90 contribution paid on May 16, 1973, as a deduction for 1973. Similarly, the $ 39,325.83 contribution paid on March 29, 1974, should be allowed as a deduction in 1974. See Rev. Rul. 63-117, 1963-1 C.B. 92↩.