MARK D. EAGLETON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79553.  Promulgated March 2, 1937.

*Mark D. Eagleton* pro se.
*George D. Brabson, Esq.*, for the respondent.

554

HARRON: *Issue 1.*—The first question for determination is whether the petitioner is entitled to deduct from gross income of the year 1932 the amount of $25,000, his investment in the preferred stock of the Bethlehem Pipe Fittings Corporation. Respondent disallowed the claimed deduction for the reason that it was "not substantiated."

Section 23 (e) (2) of the Revenue Act of 1932 allows deductions from gross income for losses *sustained during the taxable year* if incurred in any transaction entered into for profit. Article 174 of Regulations 77 of the Bureau of Internal Revenue sets forth regulations applicable to obtaining allowance of a deduction for a loss arising from an investment in stock and provides that "If stock of a corporation becomes worthless * * * its cost or other basis * * * is deductible by the owner in the taxable year in which the stock became worthless, provided a satisfactory showing is made of its worthlessness."

The rule is well established that to deduct a loss arising out of an investment in stock the taxpayer must deduct the loss in the year in which it is sustained. *DeLoss* v. *Commissioner*, 28 Fed. (2d) 803; *Leigh Carroll*, 20 B. T. A. 1029; *E. S. Lee*, 15 B. T. A. 1213; *Carl Muller*, 4 B. T. A. 169. In the instant proceeding the question to be determined is whether the loss in question was sustained in the taxable year, 1932. If the stock had been worthless in 1931, as well as in 1932, petitioner would not be allowed to take the deduction for loss in 1932. *Gowen* v. *Commissioner*, 65 Fed. (2d) 923; certiorari denied, 290 U. S. 687; *Squier* v. *Commissioner*, 68 Fed. (2d) 25; *Alfred K. Nippert et al., Executors*, 32 B. T. A. 892.

In September 1931 the Bethlehem Pipe Fittings Corporation ceased all manufacturing and business operations. There is no evidence before us to show what the financial status of the corporation was at that time, but it appears from the record that the directors of the corporation decided then that the venture was not profitable and should be discontinued. The petitioner was the chief financial backer of the corporation, a director, owner of 50 percent of the preferred stock (according to his testimony), a creditor, and in close touch with those actively conducting the business. It is reasonable to assume that he was in a position to ascertain whether the corporation was solvent in 1931 and whether his stock had any value then, but the record is silent on this point. Petitioner at the hearing

was put on notice by respondent that this item was disputed as a matter of fact and that proof as to facts was necessary.

In 1932 the corporation was dissolved. Prior to its dissolution, all assets were transferred to the petitioner in payment of the indebtedness to him of $44,000. The only evidence relating to the aggregate value of the corporation's assets is petitioner's testimony that in his opinion they were worth approximately $20,000. These assets consisted principally of a building which had cost the corporation $15,000 and against which there was a first mortgage lien of $11,000, which petitioner assumed, machinery, and other equipment which had been used. From the evidence it is doubtful whether these assets had a value greater than the amount of the debt to petitioner. We are of the opinion that the stock was worthless in 1932.

It is material to petitioner's contention to show that the stock in question had some value at the end of the year 1931 to overcome any presumption that the loss was sustained prior to the taxable year, 1932. The petitioner, in effect, has asked that this be assumed. However, it is certainly doubtful whether the assets transferred to petitioner in 1932 had any greater value at the end of 1931 than they had in 1932 and there is no evidence before us to show that the corporation had any other assets in 1931 or that it was in a better financial condition at the end of that year than in 1932. From the record and in the absence of evidence to show that the corporation was solvent at the end of 1931, we are unable to *assume* that the corporation was in fact solvent at the end of 1931. If the corporation was insolvent at the end of the year 1931, the loss on its stock was sustained in that year and petitioner should have deducted the loss in his return for the year 1931 without waiting until the corporation was liquidated or dissolved. See *John Crosby Brown*, 27 B. T. A. 176, 182; *Squier* v. *Commissioner*, *supra*.

The petitioner cites *C. W. Deeds*, 14 B. T. A. 1140; *Henry W. Cushman*, 13 B. T. A. 41; *Edward J. Slater*, 12 B. T. A. 60; and *News Publishing Co.*, 6 B. T. A. 1257. However, those cases are distinguishable from the instant proceeding in that they involved going concerns whereas in the instant proceeding the corporation had ceased to do business in the prior year. The case of *Fred Grittman*, 11 B. T. A. 122, cited by the petitioner, is not here governing. There it appeared that although the corporation did not operate until about four years after the taxpayer first purchased its stock, it did not become insolvent, and its stock worthless, until the year in which the loss was claimed on the stock.

From a review of all the evidence, we are unable to determine that the claimed loss was *sustained* in 1932 so as to be deductible from gross income in the taxable year. The petitioner has failed to establish error in respondent's disallowance of the deduction. There-

fore, the respondent's action in disallowing the loss for 1932 is approved.

*Issue 2.*—There is no question in this issue with respect to whether Waechter earned the total amount of $24,000 claimed as compensation paid to him in the taxable year, nor as to whether the salary was reasonable. The question is whether petitioner, on a cash receipts and disbursements basis, may deduct the amount of $19,000 as a business expense in the taxable year when payment was by checks which have never been cashed. The question is whether this amount was "paid or incurred" in the taxable year so as to be deductible under the provisions of section 43 of the Revenue Act of 1932.

Section 23 (a) of the Revenue Act of 1932 permits the deduction of salaries "paid or incurred" during the taxable year, and section 48 (c) of such act states that the term "paid or incurred" shall be construed according to the method of accounting on the basis of which the net income is computed. Section 43 [1] of the same act sets forth the period for which deductions and credits shall be taken. (See also article 341 of Bureau of Internal Revenue Regulations 77.)

The petitioner was on a cash receipts and disbursements basis and he was required to make his return on that basis. If the amount in question was not *paid* in 1932 he may not take the deduction in that year. "It is the purpose of the [Revenue] Act to require returns that clearly reflect taxable income. That purpose will not be accomplished unless income received and deductible disbursements made are treated consistently." See *United States* v. *Mitchell*, 271 U. S. 9. In that case the Court also stated that "it was not the purpose of the Act to permit gross income actually received to be diminished by taxes or other deductible items disbursed in a later year, even if accrued in the taxable year. It is a reasonable construction of the law that the same method be applied to both sides of the account." The provisions of the revenue act referred to in the quotation are practically the same as the pertinent provisions in the Revenue Act of 1932 referred to above.

Payment by check is a conditional payment subject to the condition subsequent that the check is paid on presentation thereof to the drawee. When this method of payment is carried through to the performance of the condition subsequent, it is reasonable to conclude that the payment dates back to the time of giving the check, and it has been held accordingly. See *Estate of M. A. Bradley*, 19 B. T. A. 49, 52, and *Commissioner* v. *Bradley*, 56 Fed. (2d) 728, affirming

---

[1] SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.

The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period.

19 B. T. A. 49. In the case of the *Estate of M. A. Bradley*, it was pointed out by this Board that "to hold that delay in depositing a check suspends the maker's rights until deposit, would introduce uncertainty into the determination of income so as to make accuracy in accounting impossible. It would distort the reasonable intention of the law." In that proceeding the facts showed that a check given in payment of taxes on June 25, 1926, was duly paid on September 21, 1926, and that the payment related back to the date of its delivery.

The issue here involved is not the same as in the case of *Estate of M. A. Bradley*, for the checks given to Waechter in 1932 were never cashed, were returned to the petitioner before the close of the year. Also, the checks could not have been cashed, for at the end of 1932 petitioner's bank balance was only $3,713 and on January 1, 1933, the bank account was closed. Waechter was credited with $19,000 on the books of the partnership on January 1, 1933. After giving Waechter this credit on the partnership books, Waechter could withdraw money and the withdrawals probably would be considered as dating back to the date of the credit. We are not required to pass upon the effect of the credit in 1933 for income tax purposes of petitioner for that year, because that year is not before us. But the transaction throws light on the issue that is before us. We are unable to conclude that the credit given in 1933 was the same as cashing the checks given in 1932 so as to relate the payment back to 1932. Two methods of payment are involved—first, an attempted payment by checks which was not carried through to performance of presenting the checks to the drawee for payment; second, establishing a credit on a new set of books to the account of the employee involved. If the first method of payment had been carried out and the checks had been cashed in 1932 or 1933 payment would relate back to the time of giving the checks, under the general rule set forth in *Commissioner* v. *Bradley, supra.* But the payment involved was effectuated by the second method and we can not find any support for holding that the credit transaction resulted in payment to Waechter as of any other date than the date of entry of the credit on the partnership books in 1933. In other words, we are unable to hold that the credit given in 1933 related the payment back to 1932. In so holding, we can see no element of uncertainty in determining petitioner's income in the taxable year or jeopardy to accuracy of accounting, the elements going to the reasonableness of the rule of the case of the *Estate of M. A. Bradley, supra.* Shortly before the end of 1932 petitioner took back the checks, preventing any diminution of his income for the year 1932 and making it entirely possible to make accurate his accounting records for 1932 as to cash disbursed

or subject to reduction by any outstanding checks. From petitioner's testimony it is evident that he was aware that the arrangement with Waechter would keep cash on hand intact, for he stated as follows:

It takes a large sum of money to continue to try to do business with the necessity of advancing to clients. At one time we had over $200,000 in advances to clients alone. So, with that amount of money in the firm, I naturally wanted my partner to put in as much as he could, and if he could not put anything in, at least not to take any out.

It is therefore held that no payment was made in 1932 of the $19,000 involved, that petitioner is not entitled to the deduction, being on a cash basis, and the disallowance by the Commissioner is affirmed.

During 1932 petitioner gave Waechter a check for $10,000 for services performed in 1931 and Waechter cashed this check in 1932. Petitioner obtained a deduction of this amount in his income tax return for 1931. Consequently, there is no issue before us as to an amount of $10,000 paid in 1932. Petitioner has stated in his brief as follows: "Petitioner has at no time claimed, and does not now claim, that he should receive credit in his 1932 return for that payment [$10,000 back salary], having received credit therefor in his 1931 return."

*Issue 3.*—The petitioner claims that the respondent erred in disallowing $2,153.22 of the deduction claimed as ordinary and necessary business expenses because the disallowed portion constitutes the expenses of maintaining the law office at 2318 Randolph Street. The evidence shows that the petitioner did use the office at 2318 Randolph Street in connection with his law practice, and, hence, any ordinary and necessary expenses paid in carrying on such business at that address are deductible. Sec. 23 (a), Revenue Act of 1932. No business other than the petitioner's law practice was carried on at that address, since the business formerly carried on by the Bethlehem Pipe Fittings Corporation had been abandoned. The petitioner's acquisition, ownership, and use of that building, together with the machinery and supplies stored therein, were not related to his law business, except, of course, the use of the office. Some of the expenditures, so far as the evidence shows, may have been capital expenditures rather than business expenses; others may have been incurred to protect petitioner's investment in the property and may not have had any relation to his law business.

Petitioner paid $551.30 interest on the mortgage outstanding on the Randolph Street property. In his income tax return he sought to deduct this amount as "rent" charged to himself as owner for office space. The building had been transferred to him by the Bethlehem Pipe Fittings Corporation. The facts show that this was payment of interest on the mortgage on the building. It is, therefore, not de-

ductible as a business expense, but is deductible under section 23 (b) of the Revenue Act of 1932 as interest paid on indebtedness. It is held that this amount is deductible.

Petitioner sought to deduct $254.75 paid for telephone service as a business expense. It has been found as a fact that petitioner used the Randolph Street building office in connection with his law practice and that telephone service there was in connection with his law practice. Petitioner testified that checks introduced in evidence totaling $245.75 were payments for telephone service. There is a discrepancy of $9 unexplained, which appears to result from some inaccuracy. It is held that the amount of $245.75 is deductible as a business expense.

Respondent disallowed as unsubstantiated, $1,347.17, miscellaneous payments claimed deductible. From the evidence and in accordance with the findings of fact it is held that the following payments for various services at the Randolph Street building law office are deductible as business expenses: $10.90, towel service; $72.71, electricity; $36.81, gas service; total, $120.42.

From examination of the evidence, we are able to identify the following totals as payments for repairs to roof, $111.50; purchase of stove, $53.05; insurance, $378.51, but there is no proof that all or any portion of each of these items were expenditures made in connection with the law office on Randolph Street. Also, there is no evidence to show whether any or all of the balance of $683.69 of miscellaneous expenditures relates to petitioner's business. It is, therefore, held that these miscellaneous expenditures totaling $1,226.75 are not deductible.

*Issue 4.*—This issue requires considering the character of petitioner's business in handling cases brought to him by outside attorneys and whether the total fees collected from this business and all disbursements thereof should be reported by petitioner in his income tax return. Petitioner explains and argues that only part of these fees constitute his income and that he is only the conduit through which there passes certain fees "earned by" and belonging to outside attorneys; and that as for the fees belonging to others, he is not bound to make report of receipt or disbursement. According to his argument, respondent is in error in adding to his taxable income the amount of $16,618.84, because it is not his income and because the figure itself is not the difference between two accounts which balance each other.

Respondent's theory is that all the fees collected by petitioner in the cases brought to him by outside attorneys are his fees and should be reported in his gross income; that the amounts paid to outside attorneys are in the nature of expense and should be deducted from

gross income; that as a matter of logic, since petitioner collected $68,177.89 in fees for outside attorneys and paid them only $51,559.05, the difference must be in petitioner's possession and must be included in petitioner's taxable income. We do not agree with respondent that the amount of $16,618.84 is necessarily a true figure of a surplus of fees collected as against fees paid out. .

It is elementary that the purpose of the income tax law is to tax income actually derived rather than constructively received, and it is assumed that individuals are not to be penalized for being the agency through which income is derived for someone else. See *Bettendorf* v. *Commissioner*, 49 Fed. (2d) 173, 175, 176. It has been held that the purpose of the income tax laws is to tax income to the person having the beneficial interest therein but not the mere collector or conduit of income belonging to another. See *Central Life Insurance Society Mutual* v. *Commissioner*, 51 Fed. (2d) 939. Hence, where a person receives money as trustee for another, the tax should not fall on the collector but on the person who has a beneficial interest therein, or if income is produced by property belonging to individuals jointly, and total income is collected by one, it has been held that the individual receiving the total income is taxable only on the portion in which he individually had the beneficial interest, the portion paid his associate or associates being received merely in trust for such party or parties. See *Stephen J. Hallahan*, 14 B. T. A. 584, 597.

In the instant proceedings the undisputed testimony of petitioner shows that he received cases from outside attorneys under agreement with them to divide the fees equally. In 1932 petitioner collected from these cases, $186,152.60. His share of the fees totaled $117,974.71. Associates' fees totaled $68,177.89. Petitioner's fees were about 63 percent of the total fees paid. From the evidence, we are satisfied that the fees allocated to associates were their fees *ab initio* by the terms of the agreement by which the cases were turned over to petitioner so that petitioner was only taxable for part of the fees yielded by the cases. The petitioner and the outside attorneys had a joint interest in these cases (the outside attorneys having obtained the cases in the first instance) and although petitioner collected the total of fees (the total income produced), he is taxable only on the portion in which he had a beneficial interest. During the taxable year petitioner's interest in the total fees collected was $117,974.71. This he reported in his gross income. From the record and evidence before us, we are unable to determine that his interest consisted of any more than that amount. From petitioner's sworn testimony we are satisfied that he was not entitled to and did not retain any part of the $68,177.89 collected for associates.

As for the amount of $16,618.84, we are not convinced that this figure represents an excess in petitioner's favor in the accounts with associates so as to constitute income as alleged by respondent. It is apparent that petitioner's associate attorneys had something of a drawing account with petitioner. He paid them fees which he collected for them, but he also advanced money to them in anticipation of making collections. At the end of a year the outside attorneys may not have received all held for them in their account of collections, or it is possible they might have overdrawn. But from the method of keeping the accounts, we believe respondent was in error in regarding as one account the credit account of fees collected for associates in 1932 and the debit account of amounts disbursed to associates in 1932, for these two sets of figures are not debits and credits of one account. There is no possibility of a true balance. Upon the undisputed testimony of petitioner, we are satisfied that he reported his entire income in the taxable year and that he did not retain as his own unreported income any of the fees collected by him for associate attorneys.

From the record and the testimony of petitioner, we are of the opinion that he has reported his full income for the taxable year and that consequently respondent was in error in adding the amount of $16,618.84 to petitioner's taxable income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL and TURNER dissent on the holding covered by the second headnote.