*Decision will be entered under Rule 155.*

JOSEPH C. WEBER AND KATHRYN Q. WEBER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1967–75.     Filed April 20, 1978.

*Malcolm D. Brutman,* for the petitioners.
*Bernard R. Baker III,* for the respondent.

OPINION

WILBUR, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the year 1972 in the amount of $23,757. The sole issue contested by petitioners is whether they are entitled to deductions for 1972 under section 461(f)[1] for the amount of two certified checks sent in payment of contested liabilities during December 1972 which were returned during 1973 without having been accepted or presented to a bank by the recipients.

All of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

Petitioners Joseph C. Weber and Kathryn Q. Weber are individuals who resided in Niagara Falls, N. Y., at the time their petition was filed in this case. Petitioners timely filed their joint Federal income tax returns for the taxable years 1972 and 1973 with the Internal Revenue Service Center at Andover, Mass.

During 1972 and 1973, petitioner[2] owned and operated the Sunny Acres Mobile Village (hereinafter Sunny Acres) in Niagara Falls, N.Y. Sunny Acres contained approximately 345 mobile home sites which were leased to individual mobile home owners. The income and expenses of Sunny Acres were reported on petitioners' Federal income tax returns for the taxable years 1972 and 1973 on the cash receipts and disbursements basis.

In January of 1971 the Town of Niagara (hereinafter Town) enacted a Sewer Service Charge Ordinance (hereinafter Sewer Ordinance) which prescribed sewer service charges for users within the Town of Niagara Sewer District. Pursuant to a retroactive provision contained in the ordinance, petitioner was billed $8,970 per calendar quarter for sewer service for Sunny Acres, beginning with the third quarter of 1970.

It was the practice of the Sewer District to send bills to users on a quarterly basis for the quarterly service charges and sewer charges in arrears. It was also the Sewer District's practice, pursuant to the Sewer Ordinance, to cause sewer charges unpaid in December of any given year to be placed upon the real estate tax assessment rolls, and to include such unpaid sewer charges on the county-town tax bill for the following year which was issued by the treasurer of Niagara County (hereinafter County) in January of each year. In January 1972, petitioner received a 1972 County and Town statement in the amount of $55,799.46 which included $35,401.07 for unpaid sewer charges for periods prior to December 31, 1971. In October 1972, petitioner received a $53,293.29 bill from the Town of Niagara Sewer District which included $9,056.70 in sewer charges for the third quarter of 1972 and a total of $44,236.59 for "sewer arrears" from prior quarters.

Petitioner, believing certain of the sewer service charges to be improper and erroneous, refused to pay these charges in full, but did, at various times, offer to pay what he believed to be the proper and correct sewer service charge, together with the

___

[2]Since Kathryn Q. Weber is a party to this action by reason of filing a joint return with her husband, Joseph C. Weber will be referred to as petitioner.

remainder of the Town and County taxes due. Because it was the practice of the Town and County during this period to refuse to accept partial payments of tax statements, petitioner's offers were refused.

When the taxes remained unpaid, the Town and County, pursuant to their statutory authority, advertised the property comprising Sunny Acres for sale to satisfy the unpaid taxes thereon. Petitioner filed suit against the Town and County on November 6, 1972, to, among other things, restrain the sale and contest the validity of the sewer service charges billed and to be billed to him. On November 13, 1972, the day before the scheduled sale of Sunny Acres, the Niagara County Supreme Court ordered the County to accept from petitioner a partial payment of his 1972 tax bill (exclusive of sewer charges) in the amount of $21,631.79, and, in effect, restrained the County from selling the real estate. Petitioner paid the $21,631.79 to the County on November 17, 1972. This amount represented the total tax bill (exclusive of sewer charges) plus 6-percent interest.

On December 28, 1972, during the pendency of the lawsuit, petitioner, through his attorney, mailed by certified mail two certified checks. A certified check for $22,932.92 was sent to the Town, and a certified check for $16,917.16 was sent to the County. These amounts represented the total amount of sewer charges petitioner admitted owing for the calendar quarters ending September 20, 1970, through September 30, 1972. The County received its check on January 2, 1973, and on or about January 17, 1973, returned it by mail to petitioner's attorney. The Town returned its check to petitioner on or about March 1, 1973. Neither certified check had been either presented for payment or endorsed prior to being returned.

On January 30, 1973, the Niagara County Supreme Court issued a second order, requiring the County and Town to accept partial payment of petitioner's 1973 Town and County tax bill. Pursuant to this order, petitioner paid $21,391 on January 30, 1973. This amount represented the total amount of his 1973 Town and County tax bill exclusive of sewer charges.

On December 28, 1973, petitioner paid the County, under protest, the full amount then due and owing for unpaid sewer charges for the years 1971 and 1972.

Petitioners deducted an amount represented by the December 28, 1972, certified checks as part of Sunny Acres' utility expense

on their 1972 Federal income tax returns. Respondent, conceding that the sewer charges were a deductible expense item, determined a deficiency based on the contention that the two certified checks did not constitute "payment" and, hence, were not deductible for 1972 by petitioners, who are cash basis taxpayers.[3]

In seeking to justify their deduction, petitioners here rely exclusively upon section 461(f) which provides, in pertinent part, that:

(f) .CONTESTED LIABILITIES.—If—
    (1) the taxpayer contests an asserted liability,
·   (2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
    (3) the contest with respect to the asserted liability exists after the time of the transfer, and
    (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year),

then the deduction shall be allowed for the taxable year of the transfer. * * *

Where the statutory conditions have been met this section permits taxpayers to deduct amounts actually transferred despite the continuing contest over the amount or existence of liability; but all four conditions must be satisfied to obtain relief under this section. See *Poirer & McLane Corp. v. Commissioner*, 63 T.C. 570 (1975), revd. 547 F.2d 161 (2d Cir. 1976), cert. denied 431 U.S. 967 (1977).[4] Clearly the taxpayer contested the asserted liability and the dispute existed after the transfer of the checks here in issue. The issue therefore turns on whether there was a transfer to provide for satisfaction of the liability that (but for the contest over liability) would have provided a deduction in 1972.

We focus first on the meaning of word "transfers" as used in

---

[3] Respondent, in the deficiency notice, also determined that the sewer charges in question were actually paid in 1973 when petitioners sent a payment which was accepted, and that petitioners therefore are entitled to an additional deduction of $39,850 for the taxable year 1973.

[4] Respondent initially asserted that this section applies only to accrual and not cash basis taxpayers, but this position has not been discussed on brief and is clearly erroneous. The language used in the section contains no hint of such a limitation, and the Senate Report accompanying its passage contains examples of its application to both cash and accrual basis taxpayers. S. Rept. 830 (Part 2), 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 700, 747. Also, the regulations under sec. 461(f) indicate that they apply to all taxpayers regardless of the accounting method used. Sec. 1.461-2(e)(1) and (g)(6), Income Tax Regs. See also H. Korbel, "1964 Act: Contested Expenses Deductible Upon Payment; Con Edison Overturned," 20 J. Taxation 291 (1964); M. Oshatz, "Accrual and Deductions of Contested and Contingent Liabilities," 26 N.Y.U. Inst. on Fed. Taxation 747, 763 (1968).

section 461(f)(2). Respondent contends that there have been no transfers because the alleged transferees did not accept the checks or present them for payment. Petitioners, on the other hand, contend that the sending of certified checks effected a removal of those funds from their control so as to constitute transfers. We find respondent's interpretation the more persuasive.

Petitioners' argument is grounded upon the language of section 1.461–2(c)(1), Income Tax Regs., which states in part that:

A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property beyond his control (i) to the person who is asserting the liability, * * *

However, petitioners err in believing that the mere attempt to place assets beyond the taxpayer's control is the equivalent of a transfer satisfying the statutory requirements. An additional element, that the recipient, or someone acting on his behalf, must accept the offered money or property, is implicit in the very nature of the word "transfers." It is made explicit with respect to transfers to escrowees and other third parties by section 1.461–2(c)(1)(ii), Income Tax Regs., which requires that the transfer be made "pursuant to a written agreement" among the parties, and neither the statute nor the regulations thereunder infer a different definition of transfer where the transfers are to persons asserting the liability.[5]

The statute and regulations contemplate that an amount be placed within the control of the obligee (or a fiduciary acting on his behalf) that will be used to liquidate (at least in part) the liability remaining when the controversy is resolved. It is very clear that the policy of the governmental units involved was to decline either formal or informal arrangements of this nature. Only after a lawsuit by petitioners and an order of the Supreme Court was petitioner able to pay the portion of the total bill attributable to real estate taxes. Petitioner surely realized that his checks would be returned. We do not believe that this

---

[5]Where payment is made and accepted subject to later adjustment in accordance with the outcome of the controversy, the payment to and control by the obligee dispense with the necessity of a written agreement. But that would be a quite different case. See *Southwestern Illinois Coal Corp. v. United States*, 491 F.2d 1337 (7th Cir. 1974).

formalistic passing of paper to and fro is the type of transfer the statute contemplates.

But even if we accepted petitioners' definition of "transfers," they are not entitled to relief under section 461(f) because they have not satisfied the fourth statutory condition, which requires that a deduction be allowable for the taxable year of the transfer but for the fact that the asserted liability is contested. This condition is satisfied only where the contest over the liability is "the *only factor* preventing a deduction for the taxable year of the transfer." (Emphasis added.) Sec. 1.461–2(e)(1), Income Tax Regs. The fact that petitioners continued to contest their liability after the purported transfer is not the only factor here preventing them from taking a deduction in 1972. An additional factor exists in their failure to pay the sewer charges during that year.

In general, cash basis taxpayers, like petitioners, may deduct expenses only "for the taxable year in which paid." Sec. 1.461–1(a)(1), Income Tax Regs. Checks do not represent final payment relieving a debtor of liability, but rather constitute only conditional payment which becomes absolute when the creditor presents the check to the bank which then honors it. N.Y. U.C.C. sec. 3–802 (McKinney 1964). For Federal tax purposes, the subsequent payment of the check relates back to the date of delivery so as to allow deductions even where checks are presented and honored during later years. *Clark v. Commissioner*, 253 F.2d 745, 748 (3d Cir. 1958), affg. in part and revg. in part a Memorandum Opinion of this Court; *Commissioner v. Bradley*, 56 F.2d 728 (6th Cir. 1932), affg. 19 B.T.A. 49 (1930); *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949); *Flint v. United States*, 237 F. Supp. 551 (D. Idaho 1964). But where the checks were not presented and honored in due course, this Court has held that no payment ever occurred because the condition upon which the conditional payment rested was never satisfied. *Estate of Hubbell v. Commissioner*, 10 T.C. 1207 (1948); *Eagleton v. Commissioner*, 35 B.T.A. 551 (1937), affd. 97 F.2d 62 (8th Cir. 1938). See P. D. Irwin, "Prepayments by a Cash Basis Taxpayer," 15 U. of S. Cal. 1963 Tax Inst. 547, 562. Since petitioners' checks were never accepted or presented to the bank by their recipients, they do not constitute payment of the sewer charges, and since no payment occurred in 1972, petitioners are not

entitled to a deduction for that year under the cash basis method of accounting.

Petitioners, while at times appearing to accept this analysis, seek to factually distinguish these cases as not involving certified checks. This, however, does not constitute a meaningful distinction since the rationale upon which they are based applies to both certified and noncertified checks. Unless a contrary agreement exists, a check constitutes only conditional payment, and the mere obtaining of certification by the debtor does not make it absolute payment discharging his liability. 2 Anderson on the Uniform Commercial Code, sec. 3–411:5, p. 981 (2d ed. 1971). Thus, the mere sending of a certified check does not constitute payment absent acceptance by the creditor and honor by the bank of the check.

Petitioners also assert that these cases are irrelevant and that the significant fact is that the certified checks constituted a transfer of money beyond their control. However, the requirement that money be transferred beyond the taxpayer's control relates only to the second statutory condition which requires a transfer of money or property. Sec. 461(f)(2); sec. 1.461–2(e), Income Tax Regs. Whether the certified checks constitute payment is relevant to deciding whether the fourth statutory condition has been satisfied. Section 461(f)(4).

Section 461(f)(2) requires a "transfer" of money or property to satisfy the asserted liability; section 461(f)(4) requires that all of the other elements (aside from the contest over liability) entitling a taxpayer to a deduction be satisfied. In holding petitioner fails to meet both requirements, we have emphasized the contingent nature of payments by checks that were virtually certain to be (and in fact were) returned. Admittedly, these reasons involve some overlap and are akin to looking at the same object from a different perspective.

Nevertheless, this is inherent in the application of section 461 to cash basis as well as accrual basis taxpayers. Certainly petitioner, a cash basis taxpayer, cannot claim a deduction in 1972 for expenses he has not paid. Section 461 disregards only his contest over liability in determining deductibility; aside from this element, section 461(f)(4) makes it clear that he can be no

better off under section 461 than he would be under the general rules of cash accouting.[6] Claiming the benefits of section 461, petitioner must abide by its terms.

*Decision will be entered for the respondent.*

---

[6]Responding to the decision in *United States v. Consolidated Edison Co. of N.Y.,* 366 U.S. 380 (1961), Congress enacted sec. 461(f) in the belief that "it is unfortunate to deny taxpayers a deduction with respect to an item where the *payment has actually been made,* even though the liability is still being contested." S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 604. (Emphasis added.)

