ROBERT L. THOBURN AND ROSEMARY S. THOBURN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thoburn v. Commissioner
Docket No. 16161-81.
United States Tax Court
T.C. Memo 1983-486; 1983 Tax Ct. Memo LEXIS 296; 46 T.C.M. (CCH) 1107; T.C.M. (RIA) 83486; August 16, 1983. *296 Held: Interest deductions disallowed where, by prearrangement, checks drawn by petitioner, reflecting the interest payments, were endorsed by the payees, returned to petitioner and deposited in petitioner's bank account. Robert L. Thoburn, pro se. Stephen M. Friedberg, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years and in the amounts as follows: Year
Deficiency
1977
$5,386
1978
8,154
*297 The deficiencies arise out of the disallowance by respondent of deductions for interest claimed by petitioners to have been paid on indebtedness allegedly due by petitioners to their children, a daughter-in-law and two grandchildren. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing of the petition in this case petitioners, who are husband and wife, resided in Fairfax, Virginia. Joint cash basis Federal income tax returns for the years 1977 and 1978 were filed by petitioners. Since 1961 to and including the years in issue, petitioner Robert L. Thoburn (Thoburn) has operated as a sole proprietorship the Fairfax Christian School in Fairfax, Virginia. During the years in issue Thoburn utilized a single bank account for both personal and school business, using checks with different legends, but with the same authorized signatures, apparently in some effort to distinguish the purposes of the expenditures. [1] Although petitioners characterize the alleged loans and payments of interest thereon as having been made to and by the Fairfax Christian School, the funds were not segregated and must be treated as transactions by and with *298 Thoburn. As an aspect of estate or family planning, commencing in 1969 Thoburn and his children have engaged in transactions which during the years 1977 and 1978 petitioners have characterized as cash gifts by Thoburn or by both petitioners followed by loans back to Thoburn by the donees of these gifts. [2] The initial transaction made on October 31, 1969, consisted of four loans, [3] evidenced by a document signed by Thoburn and including language purporting to reflect a "promise to repay" with interest at 8 percent per annum. Thoburn prepared a "statement of account" as of June 30, 1971, for each of five of his children which he now furnishes as a record of the indebtedness then owed by him to them. No further attempt to formalize this indebtedness is apparent except to record the various transactions in the loan accounts due family members on Thoburn's books and records. At various times he provided net worth statements to third parties reflecting his records of indebtedness owed to family members. Interest on these loan accounts was consistently deducted by petitioners and included in income by the individuals *299 to whom these loans were owed. At least as early as the year 1972, a practice commenced of petitioner delivering checks drawn on his bank account, payable to some of the children who were owed interest on their accounts, which checks were endorsed by the children, redelivered to petitioner or to a person acting for him and deposited into the same checking account on which petitioner drew the checks. Starting in 1975, petitioners made annual gifts by check to some or all of their children, generally in small amounts. [4] A similar *300 practice with respect to some of these gifts developed in which Thoburn drew and deposited in his bank account checks that the children and endorsed. For the year 1977, checks representing interest due on these accounts were issued to family members in the aggregate sum of $10,612.89, all of which were endorsed by the payees and deposited by Thoburn or by someone acting for him in Thoburn's bank account. For the year 1978, interest in the aggregate sum of $16,171 was included in checks purporting also to reflect gifts to each of the family members, which checks were similarly endorsed and deposited in the bank account upon which drawn. Thus, for example, one son, John M. Thoburn, received in December of 1978 a check slightly in excess of $10,000 which represented a "gift" to him of $6,000 and an interest payment of slightly over $4,000. The practice of endorsing interest checks and redelivering them to Thoburn did vary. In some years, checks for "gifts" or payments of "interest" or perhaps both were *301 delivered to one or more of the donees, which checks were deposited or cashed by the donees with the funds retained by them. Also, at various times both before and after the years in issue, payments were made to one or more of the children, characterized by petitioners as repayments of loans, but in any event representing transfers to them of part of the amounts of their loan account, which transfers were retained by them. [5]
At the times the checks were issued in 1977 and 1978, there were insufficient funds in the bank account to cover the payment of the checks. At or before the date of issuance of each check in these two years, Thoburn was aware that each payee would endorse his or her respective check and would deliver such check to Thoburn or to a person acting for him so that each check could be deposited in his bank account. On deposit of these checks, Thoburn's bank first credited the bank account with the amount of the check and then charged the check to the account, thus *302 avoiding any overdraft problem. This banking transaction was clearly a "wash" without substance, insofar as Thoburn and his bank were concerned.
With respect to the amounts of interest in issue in this case, $10,612.89 in 1977 and $16,171 in 1978, we factually find that the checks reflecting such amounts (including the purported gifts in 1978) were issued pursuant to an understanding or agreement between Thoburn and the various recipients that such checks would be endorsed by the payee, physically returned to Thoburn and redeposited in his bank account. [6] Thus, assuming but without deciding that the account balances represented indebtedness, we find as an ultimate fact that no payment of interest on the account balances was made or intended to be made in 1977 or in 1978. *303 OPINION Petitioners have argued at length that the sums reflected in these loan accounts constituted valid indebtedness. The parties have stipulated that the amounts were "considered by these individuals [the family members] as valid enforceable debts." While we have considerable doubt that a valid indebtedness can be created under the facts of this case, it is unnecessary for us to make this factual determination, since it is clear that petitioners are not entitled to interest deductions in the amounts disallowed. A cash basis taxpayer is not entitled to an interest deduction under section 163 [7] where by prearrangement the interest is "paid" by the issuance of a check which is intended to be and is in fact endorsed by the payee, returned to the issuer and redeposited in the issuer's bank account. Pike v. Commissioner,78 T.C. 822 (1982), [8] on appeal (9th Cir., September 20, 1982), is controlling and determinative of this case. In Pike we said: Section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness. Since petitioners are cash basis taxpayers, they are entitled to deductions only for the interest *304 paid during the taxable years. Sec. 1.461-1(a)(1), Income Tax Regs. [Footnote omitted.] An examination of the facts clearly shows that Pike and Mukai did not pay any interest to Norwick or Windsor in 1975. The checks petitioners wrote to pay off the interest were redeposited directly into the bank accounts on which the checks were written. Thus, the checks were deposited to cover themselves. As a result, no funds were ever received by Norwick or Windsor from petitioners, and no funds were ever paid by petitioners. In fact, at the time Pike wrote his interest checks to Norwick and Windsor totaling $9,000, he only had $1,000 in his checking account. It is thus clear that Pike knew the checks would never be charged against his account, since they would not have cleared due to insufficient funds. * * * [78 T.C. at 849.] Moreover, here we have found that there was an actual agreement or understanding that the checks would be returned to Thoburn uncashed. This fact is also fatal to a deduction. Eagleton v. Commissioner,97 F.2d 62 (8th Cir. 1938), affg. a decision of this Court, 35 B.T.A. 551 (1937). See also McCoy v. Commissioner,T.C. Memo. 1971-34. *305 Whether there was a valid indebtedness with an enforceable interest obligation is simply not material. As cash basis taxpayers, the facts simply do not entitle petitioners to an interest deduction in either of these years. On brief, for the first time, petitioners also raise the issue that respondent has changed petitioners' method of accounting without authority. Not only do petitioners raise this issue too late, since we will not consider an issue raised for the first time on brief, [9] but in fact respondent has not changed any method of accounting. All that respondent is seeking to do here is to apply the law to the facts.Petitioners' complaint in reality is that respondent failed to raise this issue prior to 1977, but failure to raise an issue in a prior audit does not preclude respondent from raising it in a later year. [10]
*306 For the reasons set forth above, we hold for respondent. Decision will be entered for respondent.
Footnotes
1. This fact has to tax significance in the context of this case.↩
2. In some instances the donee was a daughter-in-law and in others, minor grandchildren (or the parent for the benefit of the minors). Neither party has suggested that participation by the minors has any special significance and we will attribute none to that fact. ↩
3. For convenience, these transactions will be referred to as loans, debts or indebtedness although we make no finding of fact as to whether any transaction with any donee created a true indebtedness which should be recognized for Federal income tax purposes. The interest payments here in issue relate to the account balances on petitioners' books created by the aggregate of these loans.↩
4. It is not clear whether in fact Thoburn made all the gifts or whether each spouse made separate gifts. Presumably, all checks would have been drawn on the same bank account.↩
5. Respondent questions whether any part of the loan accounts with respect to which interest deductions were claimed in 1977 and 1978, reflected true indebtedness but we do not reach this question.↩
6. Thoburn testified as follows: MR. ROBERT THOBURN: I wanted to say that I don't recall the exact order in which I gave the checks to the children, but I was aware at the time that they planned to reinvest that in the school. So I wasn't concerned about having to run out and get a bank loan or liquidate something to cover that, although I could have done that if I chose. There were times when the children did keep their checks and not invest them in the school. There were times when they wanted loans repaid such as my older son who went into business or John who went into business, a daughter who got married and so forth and that money was available to them at that time.↩
7. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
8. See also Menz v. Commissioner,80 T.C. 1174↩ (1983), for a discussion of the analogous circumstance of the payment of interest with borrowed funds.
9. Rollert Residuary Trust v. Commissioner,80 T.C. 619, 636 (1983); Markwardt v. Commissioner,64 T.C. 989 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73↩ (1975). 10. Automobile Club of Michigan v. Commissioner,20 T.C. 1033 (1953), affd. 230 F.2d 585 (6th Cir. 1956), affd. 353 U.S. 180, 183 (1957). See, e.g., Rollert Residuary Trust v. Commissioner,supra;DuPont Testamentary Trust v. Commissioner,66 T.C. 761, 765 (1976), affd. per curiam 574 F.2d 1332 (5th Cir. 1978); Rose v. Commissioner,55 T.C. 28↩ (1970).