# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60084

United States Court of Appeals
Fifth Circuit

**FILED**
February 3, 2020

Lyle W. Cayce
Clerk

DAVID H. MELASKY; AUDREY MELASKY,

      Petitioners - Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

      Respondent - Appellee

Appeal from a Decision of the
United States Tax Court
Tax Court No. 12777-12L

Before OWEN, Chief Judge, and BARKSDALE and DUNCAN, Circuit Judges.

PER CURIAM:*

At issue is whether the Tax Court erred in deciding the Commissioner of Internal Revenue did not abuse his discretion:  in denying Appellants' request that the proceeds of a tax levy be applied to a tax-year for which the levy did not issue; and in rejecting a partial payment installment agreement, through which Appellants proposed to pay a portion of their outstanding tax liability. AFFIRMED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 19-60084

I.

Appellants'—married couple David and Audrey Melasky (Taxpayers)—joint tax returns for tax years (TY) 1995, 1996, 1999–2004, 2006, 2008, and 2009 are at issue. Because they did not pay their tax liabilities for these years, the IRS, as of April 2009, had sent them multiple notices of intent to levy for each pre-TY 2006 liability. Between 1997 and 2006, Taxpayers and the IRS negotiated offers in compromise and partial payment installment agreements. Although the parties agreed to such payment plans or offers on more than one occasion, Taxpayers failed to comply in each instance.

As of January 2011, Taxpayers had not satisfied any of their pre-TY 2006 tax liabilities and owed approximately $345,000 to the IRS for that period. They had additional tax liabilities of approximately $724 for TY 2006, $334 for TY 2008, and $18,000 for TY 2009.

On 27 January 2011, Taxpayers delivered an $18,000 personal check to an IRS office in Houston, Texas, drawn on an account at JPMorgan Chase. Taxpayers designated this check for their TY 2009 liability. Although the IRS Houston office made an entry on that date in Taxpayers' account for TY 2009 showing the payment, it did not immediately present the check for payment.

On 31 January, prior to the IRS Houston office's presenting the Taxpayers' check, the IRS office in Philadelphia, Pennsylvania, issued JPMorgan a notice of levy with respect to Taxpayers' TYs 1995, 1996, and 1999–2004 liabilities, providing a copy to Taxpayers. Pursuant to 26 U.S.C. § 6332(c), the bank froze Taxpayers' account, prior to the IRS' presenting the Taxpayers' $18,000 check for payment.

Also on 31 January, the IRS provided to Taxpayers a notice of intent to levy with respect to their tax liabilities for TYs 2001, 2002, 2004, 2006, 2008, and 2009. Although previous notices had been sent regarding the pre-2006 TYs, this was the first such notice for TYs 2006, 2008, and 2009.

No. 19-60084

Regarding the 31 January notice of intent to levy, Taxpayers, on 9 February, requested a Collection Due Process (CDP) hearing, pursuant to 26 U.S.C. § 6330, for their outstanding liabilities for TYs 1995, 1996, 1999–2004, 2006, 2008, and 2009.  In the request, they, *inter alia*, noted their check provided the Houston IRS Office had not been honored, stated the bank had, "[a]s a result of the [31 January] levy, . . . placed a hold" on their account, stated their intent to enter into a partial payment installment agreement, and requested the IRS apply the 31 January levy proceeds to their TY 2009 liability.  On 28 February, as a result of the levy, the IRS received approximately $21,000 from Taxpayers' JPMorgan account and applied it to their outstanding liability for TY 1995, pursuant to treasury regulations and the Internal Revenue Code's (I.R.C.) requirements.

Thereafter, the IRS presented the $18,000 check to JPMorgan, but it was dishonored because the IRS had already received the account's balance via the 31 January levy.  The IRS reversed the previously-applied credit it had given Taxpayers for TY 2009 and assessed a $360 penalty for issuing a bad check.

The Settlement Officer (SO) scheduled Taxpayers' requested CDP hearing for 25 August 2011 to consider the proposed 31 January 2011 levy-action regarding TYs 2006, 2008, and 2009.  The other TYs were not considered because, pursuant to 26 U.S.C. §§ 6330(a)(3)(B) and (b)(1) and 26 C.F.R. §§ 301.6330-1(b)(1), (2) (Q&A B-2, B-4), a taxpayer must request such a hearing within 30 days after receipt of the first notice of intent to levy for a specific TY.  The window had passed for the earlier TYs, and Taxpayers do not contest this limitation.

At the 25 August CDP hearing, Taxpayers asserted the proceeds of the 31 January levy should be applied against their TY 2009 liability and stated their intention to submit an offer in compromise regarding their outstanding liabilities. The next day, the SO requested Taxpayers submit their offer by 9 September and pay estimated taxes for the period between January and August 2011; provide a

3

No. 19-60084

copy of Mrs. Melasky's late father's will; and answer questions related to income, assets, and expenses.

Rather than submit an offer in compromise, however, Taxpayers, on 9 September, requested a partial payment installment agreement, proposing they pay $750 per month to partially satisfy their outstanding tax liabilities. In addition, they provided a copy of the requested will, which contained a spendthrift trust for Mrs. Melasky's benefit, for which she was also trustee. In response, the SO requested information regarding the trust's corpus.

On 2 December, the SO notified Taxpayers that, before entering a partial payment installment agreement, they had to liquidate the following assets prior to 16 December: four IRAs; two 401k accounts; the cash surrender value of a life insurance policy; and had to provide a check equal in value to a one-half interest in ExxonMobil stock (owned jointly by Mr. Melasky and his former wife). Taxpayers notified the SO they intended to liquidate certain of these assets to pay for their daughter's medical expenses; thereafter, the SO, on multiple occasions, extended the time to liquidate assets.

Taxpayers' attorneys' 9 February 2012 letter to the SO stated: Taxpayers had begun to liquidate assets, but had not completed the process; and the stock could not be sold without Mr. Melasky's former wife's permission. An attachment to the letter showed Mrs. Melasky's father's estate's approximate value was $1.1 million, with $236,967 available to Mrs. Melasky through the trust.

The SO responded on 4 April to Taxpayers' proposed partial payment installment agreement. He noted Taxpayers had not liquidated one IRA, one 401(k) account, the life insurance policy, or the stock. He requested their doing so prior to 11 April. Further, the SO proposed a partial payment installment plan requiring Taxpayers pay $4,580 per month for 51 months, followed by $1,017 per month upon the trust's exhaustion. Because Mrs. Melasky, as trustee of the trust for which she was one of the beneficiaries, was, per its terms, authorized to expend trust resources for her health, maintenance, support, and education, even if such

4

expenditures exhausted the trust's corpus, the SO proposed utilizing the trust to pay Mrs. Melasky's share of household expenses (68%, as calculated by the SO). This would allow Taxpayers to use funds that would otherwise be allocated to such expenses to instead be applied to payment of their outstanding tax liabilities.

Taxpayers' attorneys responded by an 11 April letter, stating Taxpayers were awaiting checks from the liquidation of some assets; they requested permission to remit the cash value of the life insurance policy without having to liquidate it, and offered to allow the IRS to seize the stock because Mr. Melasky could not liquidate it without his former wife's consent. Further, Taxpayers rejected the proposed partial payment installment agreement, taking issue with the SO's attribution of 68% of household expenses to Mrs. Melasky. In their view, she could not utilize funds from the trust for her benefit because her non-trust income could cover those expenses, and her utilizing the trust would deprive her children as secondary beneficiaries and violate Article 4.2 of the will (concerning distributions from spendthrift trust). They instead offered to pay $1,017 per month.

The SO disagreed and closed their case on 16 April. Upon the SO's doing so, the IRS Office of Appeals (the Office) reviewed the results of the CDP hearing and considered the proposed levy regarding TYs 2006, 2008, and 2009. On 20 April 2012, the Office issued Taxpayers a notice of determination, sustaining the 31 January notice of intent to levy. The Office, *inter alia*, determined the IRS properly issued the notice, pursuant to 26 U.S.C. §§ 6330 and 6331, and further determined the IRS properly applied the proceeds of the levy to Taxpayers' TY 1995 liability, reasoning: because the funds from Taxpayers' account were obtained pursuant to the levy—despite Taxpayers' having earlier delivered a check to the IRS—the levied funds were treated properly as involuntary and applied in the best interests of the United States. The Office rejected Taxpayers' 11 April proposed partial payment installment agreement, disagreeing with their contention that each spouse paid half of household expenses because Mr. Melasky

had insufficient income to do so.  Regarding the trust, it explained there were no conditions on distribution.

Taxpayers petitioned for review in the tax court.  After each party moved for summary judgment, the court granted the Commissioner's motion in an extremely detailed and comprehensive, reviewed opinion (after an opinion's issuance by a division of the tax court, the tax court's chief judge may designate it for review; otherwise, the opinion of the division becomes the opinion of the tax court after 30 days, *see* 26 U.S.C. § 7460(b)).  *Melasky v. Comm'r*, 151 T.C. 93, 104, 120–21 (2018); *see also Melasky v. Comm'r*, 151 T.C. 89, 92 (2018) (separate opinion establishing "abuse of discretion" rather than "*de novo*" as proper standard of review because amount of underlying tax liability was not at issue; subsequent cites for the tax court's review are to its opinion on the merits).  For the following reasons, the tax court concluded the Office did not abuse its discretion in deciding not to apply the levy proceeds to Taxpayers' TY 2009 liability and in rejecting Taxpayers' proposed partial payment installment agreement.  *Melasky*, 151 T.C. at 110–11.

Concerning the check's not being applied as requested by Taxpayers, although they contended the check they delivered to the IRS constituted a voluntary payment, the court cited tax court and Texas precedent holding payment by check remains conditional until it is "paid upon presentation to the drawee (i.e., the bank in this case)".  *Id.* at 106–07 (citations omitted).  The tax court acknowledged taxpayers are ordinarily allowed to designate to which year's tax liability a voluntary payment is credited, but stated "involuntary payments may generally be applied against whichever unpaid tax liabilities the Commissioner chooses".  *Id.* at 106 (citations omitted).  It determined there was no dispute the payment resulted from a levy; it was therefore an involuntary payment, and the Commissioner properly applied it to the liability of his choice.  *Id.* at 110.   The court declined "to create an equitable exception to the[] straightforward rules for situations in which a taxpayer's check [is] dishonored

following a lawful IRS levy on the bank account against which the check was drawn". *Id.* at 107–08.

Regarding Taxpayers' proposed partial payment installment agreement, the court decided there was no abuse of discretion in its being rejected because: Taxpayers did not liquidate the assets they were instructed to liquidate within the time allotted, instead providing excuses and seeking multiple delays; and Taxpayers could pay more than they proposed. *Id.* at 111–13.

On the first point, the court stated: "We cannot say that the SO abused his discretion in declining to extend the deadline yet again, after three previous extensions over a period of approximately 4.5 months". *Id.* at 112–13. On the second, the court analyzed the trust pursuant to Texas law and found nothing prohibited Mrs. Melasky's, as trustee, distributing funds to herself. *Id.* at 115–19. It also held exhausting the trust would not violate her fiduciary duties because she was authorized to do so. *Id.* at 119. And, even if the spouses should be held accountable for equal shares of household expenses, an issue the court did not reach, it determined it "would still conclude that the SO did not abuse his discretion" in determining the Melaskys could pay more than they offered. *See id.* at 120.

All of the judges agreed the SO had not abused his discretion in rejecting the Taxpayers' proposed partial payment installment agreement. *See id.* at 158 (Holmes, J., dissenting). But, concerning the dishonored check, there were two concurring, and one dissenting, opinions. One concurrence, by Judge Lauber, agreed with the opinion of the court, and was written "in response to the dissent". *Id.* at 121 (Lauber, J., concurring). Although Judge Lauber thought "[m]any things said [in the dissent] would justify lengthy rebuttal", he chose to focus on the dissent's treatment of the dishonored check as a voluntary payment. *Id.* This opinion was joined by eight other judges. *Id.* at 127. The second concurrence was written "to emphasize . . . the limited scope of the opinion of the Court". *Id.* (Buch & Pugh, JJ., concurring). Two other judges joined this opinion. *Id.* at 128.

No. 19-60084

Finally, one judge dissented because he thought the majority went beyond the reasoning utilized by the SO in reaching his conclusions and because he thought the Taxpayers' check should be considered a voluntary payment. *Id.* at 128–30, 159 (Holmes, J., dissenting). This opinion was joined by one other judge. *Id.* at 159.

## II.

Taxpayers proceed *pro se* on appeal, including Appellant David Melasky's—a lawyer—presenting oral argument. They challenge the tax court's deciding it was not an abuse of discretion for the SO to deny both their requested application of the levy proceeds and their proposed partial payment installment plan. They do not, however, contest the propriety of the IRS' levy.

Our court reviews *de novo* a tax court summary judgment. *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003) (per curiam). "In a collection due process case . . . the [t]ax [c]ourt (and hence this Court) reviews the underlying liability *de novo* and reviews the other administrative determinations for an abuse of discretion." *Christopher Cross, Inc. v. United States*, 461 F.3d 610, 612 (5th Cir. 2006) (citations omitted). Because "Congress likely contemplated review for a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS, lest the judiciary become involved on a daily basis with tax enforcement details that Congress intended to leave with the IRS[,] . . . [w]e adopt this standard." *Id.* (internal quotation marks and citations omitted).

For the following reasons, as well as essentially for the reasons stated in the tax court's majority opinion, there was no abuse of discretion.

## A.

Regarding Taxpayers' contention the IRS abused its discretion by not applying the *levied* funds towards their outstanding tax liability for TY 2009, there is a distinction between delivering a check and making a payment. The I.R.C. establishes: where a "check is not duly paid", a taxpayer "shall remain liable for the payment of the tax . . . to the same extent as if such check . . . had

8

not been tendered". 26 U.S.C. § 6311(b). Furthermore, Treasury regulations differentiate between "tender[ing]" a check and its being "paid". *See* 26 C.F.R. § 301.6311-1(b)(1). "Checks do not represent final payment . . . but rather constitute only conditional payment which becomes absolute when the creditor presents the check to the bank which then honors it." *Weber v. Comm'r*, 70 T.C. 52, 57 (1978) (citation omitted). "[W]here the checks were not presented and honored in due course, [the tax court] has held that no payment ever occurred because the condition upon which the conditional payment rested was never satisfied". *Id.* (citations omitted). "IRS policy permits taxpayers who 'voluntarily' submit payments to the IRS to designate the tax liability to which the payment will apply." *United States v. Energy Res. Co.*, 495 U.S. 545, 548 (1990) (citation omitted). As explained in the IRS revenue procedures:

> If additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer . . . at the time the taxpayer voluntarily tenders a partial payment that is accepted by the [IRS] and the taxpayer provides specific written instructions as to the application of the payment, the Service will apply the payment in accordance with those directions.

Rev. Proc. 2002-26 § 3.01, 2002-1 C.B. 746.

When money is seized from a taxpayer involuntarily, however, the taxpayer is not afforded the privilege of designating towards which outstanding liability the funds are to be applied. *In re Johnson*, 146 F.3d 252, 261 n.29 (5th Cir. 1998) (citation omitted). "An involuntary payment traditionally has been defined as any payment received by agents of the United States as a result of distraint or levy *or from a legal proceeding* in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Such involuntary proceeds of a levy "shall be applied" to the expenses of the levy, any specific tax applicable to the seized property, or "against the liability in respect of which the levy was made". 26 U.S.C. § 6342(a). The IRS' discretion

regarding the TY to which funds received may be applied is, therefore, limited to its selecting from the TYs to which the levy applied. *See id.*

Although Taxpayers tendered a check to the IRS office in Houston, it was not ultimately paid; rather, it constituted a conditional payment that was never honored and never became absolute. *See Weber*, 70 T.C. at 57 (citation omitted). Rather than a voluntary payment, the Office of Appeals determined the funds the IRS received from Taxpayers' JPMorgan account were received involuntarily, pursuant to a valid levy. Taxpayers agreed with this categorization when dealing with the IRS and during proceedings in the tax court, and they continue to do so on appeal, repeatedly referring to levy proceeds and requesting their application toward Taxpayers' TY 2009 liability. As stated by the tax court, "[t]here is no dispute that the $21,182 payment at issue was a result of [the] levy". *Melasky*, 151 T.C. at 110.

The 31 January levy was for liabilities for TYs 1995, 1996, and 1999–2004. As such, the levy proceeds could not have been utilized as a credit towards Taxpayers' liability for TY 2009. *See* 26 U.S.C. § 6342(a). Because the IRS had no discretion to apply the proceeds of the levy to Taxpayers' outstanding TY 2009 liability, it was not an abuse of discretion not to apply them as Taxpayers requested.

After negotiations and failure to comply with payment plans (and some 15 years of nonpayment), Taxpayers' account was levied, and the funds were applied as mandated by law. The IRS "did not cause [Taxpayers'] check to bounce; [it] bounced because they owed and have chronically failed to pay various taxes". *Melasky*, 151 T.C. at 109. As noted in a concurrence to the tax court majority opinion, "[b]y choosing . . . a personal check rather than a certified check or money order, the Melaskys ran this risk; ever since they [received] notice of intent to levy[, first issued to them in 2001] (and then defaulted on installments), they had run the risk that the IRS would levy on their accounts and . . . their checks would bounce". *Id.* at 128 (Buch & Pugh, JJ., concurring). As the tax court recognized,

No. 19-60084

Taxpayers seek the "creation of an equitable exception to the normal rules", but "there is no caselaw or other authority to support" such creation; even if there were, there is "no apparent reason to do so in this case". *Id.* at 109 (majority opinion).

On appeal, Taxpayers assert the IRS deliberately delayed presenting their check for payment in order that it could seize the same funds by levy, which Taxpayers deem "intentional manipulation of banking procedures". Taxpayers at oral argument, however, admitted having no evidence to support this assertion and stated they only presumed this to be the case. Needless to say, that assumption carries no weight.

B.

Regarding Taxpayers' contending the denial of their proposed partial payment installment agreement was an abuse of discretion, the Secretary of the Treasury may enter such plans upon determining they "will facilitate full or partial collection" of outstanding liabilities. 26 U.S.C. § 6159(a). The Secretary is not required to enter such agreements unless certain criteria, not relevant here, are met. *See id.* § 6159(c). As further explained by regulation: "Except as provided in paragraph (c)(1)(iii) of this section, the Commissioner has the *discretion* to accept or reject any proposed installment agreement". 26 C.F.R. § 301.6159-1(c) (emphasis added). In practice, an SO makes an initial determination whether a proposed plan should be accepted, after which the decision may be appealed to the Office of Appeals, with review by the tax court, as occurred in this case. *See* 26 U.S.C. § 6330.

The Internal Revenue Manual (Manual) provides guidance to SOs in determining whether to accept a proposed partial payment installment plan. "Generally, it is not an abuse of discretion where an Appeals Office employee relies on guidelines published in the [Manual] when evaluating a proposed [partial payment] installment agreement." *Arede v. Comm'r*, 107 T.C.M. (CCH) 1152, 2014 WL 657772, at *4 (20 Feb. 2014) (citations omitted).

11

No. 19-60084

During the time-period when Taxpayers interacted with the SO, the Manual provided a partial payment installment agreement "*will be recommended for rejection* if there is sufficient equity or cash available . . . to *partially pay* the taxes and the partial payment requested is not received by a set date". IRM 5.14.1.4(6)(c) (1 June 2010) (emphasis in original). The Manual also provided that "[t]he taxpayer must agree to pay the maximum monthly payment based upon the taxpayer's ability to pay". IRM 5.14.2.1.1(7) (11 March 2011).

In this instance, the SO identified assets Taxpayers could liquidate to provide funds in satisfaction of a portion of their outstanding tax liabilities and provided them a deadline for doing so. After three extensions, they had not liquidated the assets as instructed. Because Taxpayers entered, but failed to comply with, multiple-prior-payment agreements, and given their exhibited refusal to comply with the SO's directives, it was not an abuse of discretion to conclude entering yet another partial payment installment plan would not "facilitate full or partial collection of the tax liability". 26 C.F.R. § 301.6159-1(a).

Furthermore, Taxpayers refused to pay at a level at which the SO determined they were able. Although our court has not considered cases dealing with the rejection of partial payment installment plans with any regularity, it has held it was not an abuse of discretion for an SO to reject a proposed partial payment installment plan where the SO determined the taxpayers had the ability to pay more and had proposed an alternate plan that taxpayers rejected. *See Marascalco v. Comm'r*, 420 F. App'x 423, 424–25 (5th Cir. 2011) (per curiam).

Taxpayers disagree with the SO's considering the trust Mrs. Melasky may access when determining their ability to pay. As the tax court ruled, however: the will creating the trust unambiguously "provides discretionary authority to . . . Mrs. Melasky[] to distribute so much of the income or principal (i.e., the corpus) as appropriate to provide for [her] continued health, maintenance, support, and education"; and the SO "included trust distributions only to the extent that those projected funds would be used to pay nontax necessary expenses". *Melasky*, 151

T.C. at 115 (internal quotation marks omitted). The IRS seeks neither attachment nor assignment of the trust assets. Rather, given Mrs. Melasky's ability, as trustee, to distribute trust funds to herself in order to pay necessary expenses, if Taxpayers had paid in accordance with the SO's proposed partial payment installment plan, they would have had the option to spend less income each month or to disburse trust funds to satisfy their necessary expenses.

## III.

For the foregoing reasons, the tax court's 11 October 2018 ORDER AND DECISION is AFFIRMED.